Elsie M.B. GRIER, Petitioner,

v.

Edward G. GRIER, Jr., Respondent.

No. C–5736.

Supreme Court of Texas.

May 6, 1987.

Rehearing Denied June 17, 1987.

Colbert N. Coldwell, Guevara, Rebe, Baumann & Coldwell, El Paso, for petitioner.

John Gates, El Paso, for respondent.

## ON MOTION FOR REHEARING

WALLACE, Justice.

We grant the Motion for Rehearing, withdraw the judgment and opinion of April 15, 1987 and substitute this opinion.

This post-divorce declaratory judgment action presents a question as to the proper characterization and division of military retirement benefits. The Griers were divorced in 1975. At the time of the divorce Edward was a major in the United States Army. The divorce decree did not dispose of Edward's military retirement benefits, as these benefits were not divisible community property at the time of the decree. Eight months after the divorce, Edward was promoted to the rank of lieutenant colonel.

In 1983 Elsie Grier filed suit in a California court seeking partition of Edward's retirement benefits. Edward brought this action for a declaratory judgment that his retirement benefits had been declared noncommunity property under the divorce decree of 1975. The trial court rendered judgment that Edward's military retirement benefits were subject to partition as community property and awarded Elsie Grier a 37.45% interest in Edward's future gross retirement benefits based upon the rank of lieutenant colonel. The court of appeals reversed and rendered judgment awarding Elsie 37.45% of Edward's "disposable retired pay" payable to a major

who would have retired on the date of the Grier's divorce. 713 S.W.2d 213. We affirm the judgment of the court of appeals as modified herein.

Elsie Grier contends that the court of appeals erred in reversing the trial court and in awarding a portion of Edward's retirement benefits based on the rank of major, rather than on the rank of lieutenant colonel. We disagree with this contention. At the time of the Grier's divorce in 1975, Edward held the rank of major, but had been placed on a promotion list by the 1975 AUS Lieutenant Colonel's Promotion Board. Edward was not actually promoted to the rank of lieutenant colonel until May 2, 1976, some eight months after the divorce. It is undisputed that Edward did not become entitled to any of the increased pay or retirement benefits accompanying his elevation in rank until after his divorce from Elsie Grier.

■ In *Berry v. Berry*, 647 S.W.2d 945 (Tex.1983), we settled the question of the valuation and apportionment of the community's interest in retirement benefits. Such benefits are to be apportioned to the spouses based on the value of the community's interest at the time of divorce. Since Edward did not become entitled to the increase in his military retirement pay resulting from his promotion until after his divorce, an order awarding Elsie a share of Edward's retirement benefits based on the rank of lieutenant colonel would impermissibly invade Edward's separate property. We hold that in apportioning military retirement benefits upon the dissolution of a marriage, the valuation of the community's interest in such benefits is to be based on the retirement pay which corresponds to the rank actually held by the service spouse on the date of the divorce.

We must next consider the question of whether Elsie's share of the community interest in Edward's retirement pay is limited to 50% of disposable net pay under the Federal Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (FUSFSPA), as the court of appeals has held.

Before the decision of the U.S. Supreme Court in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), Texas courts apportioned the community property interest in retirement benefits earned during marriage according to the formula established in *Taggart v. Taggart*, 552 S.W.2d 422 (Tex.1977) and *Cearley v. Cearley*, 544 S.W.2d 661 (Tex.1976). In *McCarty*, the Supreme Court determined that military retirement benefits could not be treated by the states as marital property subject to division upon divorce. Congress enacted FUSFSPA with the intent to "restore the law to what it was when the courts were permitted to apply State divorce laws to military retired pay." S.Rep. No. 502, 97th Cong., 2d Sess. 5, *reprinted in* 1982 U.S.Code Cong. & Ad.News 1555, 1596, 1599. We now address the court of appeals' holding that FUSFSPA also had the effect of prohibiting state courts from apportioning more than 50% of the service spouse's "disposable pay."

The court of appeals based its holding that Congress intended to limit the states' ability to characterize and divide military retirement pay on section 1408(c)(1) of FUSFSPA which reads:

> [s]ubject to the limitations of this section, a court may treat *disposable* retired or retainer pay ... either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court (emphasis added).

"Disposable retired pay" is defined in the statute as gross pay less certain statutory deductions which may be elected at the option of the service spouse. 10 U.S.C. § 1408(a)(4).

An examination of this statute convinces us that it was not intended to limit the states' power to characterize only "disposable" military retired pay as a marital asset. This section of FUSFSPA is not concerned with limiting the amount of retired pay available for division by state courts, but is instead designed to limit the amount of retired pay which can be garnished and

paid out by the service secretaries pursuant to court orders for child support, alimony, property division and the like. This purpose is revealed by this section's statutory title: "Payment of Retired Retainer Pay in Compliance With Court Orders." When the maximum amount of 50% of disposable retired pay has been garnished by the service secretaries pursuant to court orders, any further obligation of the service spouse may be "enforced by any means available under law." 10 U.S.C. § 1408(e)(6). As the statute makes clear:

> [n]othing in this section shall be construed to relieve a member of liability for the payment of alimony, child support, or other payments required by a court order on the grounds that payments made out of disposable retired or retainer pay under this section have been made in the maximum amount permitted [under the Act].

10 U.S.C. § 1408(e)(6).

We note that our construction of the effect of FUSFSPA is one which has been adopted by other courts which have had an opportunity to consider the issue. *See, Casas v. Thompson,* 42 Cal.3d 131, 228 Cal. Rptr. 33, 720 P.2d 921 (1986), *cert. denied,* — U.S. ——, 107 S.Ct. 659, 93 L.Ed.2d 713 (1987); *Deliduka v. Deliduka,* 347 N.W.2d 52 (Minn.App.1984).

■ We hold that the Federal Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408, does not limit the amount of military retirement pay which may be characterized and apportioned as a community asset under our marital property system. We conclude that the FUSFSPA provisions are intended only as a limit on the amount of disposable retired pay which can be garnished and paid out by the service secretaries pursuant to court orders.

The judgment of the court of appeals is modified to the extent that Elsie Grier is awarded 37.45% of Edward Grier's gross retired or retainer pay based on the rank of major which is currently payable to such officer who would have retired with 20 years service in September 1975 together with increases which may occur other than increases attributable to elevation in rank or services rendered by the military spouse after the date of divorce. As modified, the judgment of the court of appeals is affirmed.

MAUZY, J., concurring and dissenting.

MAUZY, Justice, concurring and dissenting.

My dissenting opinion of April 15, 1987 is withdrawn and this concurring and dissenting opinion is substituted therefor.

I agree with the court's decision that the community interest in military retirement benefits is derived from gross military retirement pay. I respectfully dissent as to the court's holding that the military retirement benefits at issue herein are valued at the rank of major. I would hold that Elsie Grier is entitled to benefits valued at the rank of lieutenant colonel.

Edward and Elsie Grier were married November 25, 1959, and were divorced on September 18, 1975. Edward entered the U.S. Army on December 7, 1953, as a private E–1 and rose to the rank of corporal. Edward then left the Army and entered college in September of 1955. On June 12, 1959, Edward was commissioned as a 2nd lieutenant, which commission was adjusted to July 29, 1960. On the date of the parties' divorce, Edward had accrued 14.98 years of military service while married to Elsie and 16.84 years' total time in military service. Edward's rank on September 18, 1975, the date of divorce, was major, Army of the United States (AUS); however, on July 30, 1975, and prior to the divorce, Edward was placed on the 1975 AUS Lieutenant Colonel's Promotion List. He received his lieutenant colonel's commission on May 2, 1976.

In valuing at the rank of major Elsie's share of the military retirement benefits, the court relies on *Berry v. Berry,* 647 S.W.2d 945, 947 (Tex.1983). I agree with

*Berry* in that, as a general rule and for the purpose of consistency, retirement benefits should be valued as of the date of divorce. Nevertheless, in applying that general rule to the instant cause, the court has placed form over substance. The result is that precision in the law for the sake of consistency has prevailed over equity. The instant cause is cut from the cloth of equity. The question herein is not what precise rank Edward Grier was serving on the date of divorce but rather, had he, in fact, already been promoted to the next higher grade on or before the date of divorce? I would hold that Edward Grier had been promoted to lieutenant colonel prior to the parties' divorce.

A determination of the value of the retirement benefits at issue herein requires an analysis of the statutes, regulations and procedures, all of which are mandatory, that govern and are peculiar to promotions in the armed forces. The promotion process begins with commanding officers, who make written evaluations, known as Officer Efficiency Reports (OERs), of the military members under their command. OERs are placed in an officer's permanent military record, or file, and constitute the primary basis upon which promotions rest. Those military personnel files are reviewed by statutorily constituted Selection Boards, which operate under regulations prescribed by, in this instance, the Secretary of the Army. 10 U.S.C. § 3297 (1959) (recodified at 10 U.S.C. § 611 et seq. [1983]). Based on their reviews, the Selection Boards, which utilize a point system in evaluating the file of a military member, make promotion recommendations to the service secretary. *See* Ellis, *Judicial Review of Promotions in the Military*, 98 Mil.L.Rev. 129 (1982); Ford, *Officer Selection Boards and Due Process of Law*, 70 Mil.L.Rev. 137 (1975).

In making its recommendations, the Board follows a letter of instruction from the service secretary, which letter sets the maximum number of officers to be recommended in each grade. Ford, *supra*, at 132. Further, and without regard to vacancies, each promotion-list officer whose regular grade is 1st lieutenant, captain, or major is considered by a Selection Board for promotion to the next higher grade, far enough in advance of the date on which he will complete 7, 14, or 21 years of service so that if recommended, he may be promoted on the date on which he will complete that service. 10 U.S.C. § 3299(b) (1959) (recodified at 10 U.S.C. § 628 [1983 & Supp.1986]).

Once selected for promotion by a Selection Board, promotion-list officers are either promoted or eliminated from the active list. 10 U.S.C. § 3299 (recodified at 10 U.S.C. §§ 631, 632 [1983 & Supp.1986]). If an officer is "eliminated from the active list" pursuant to section 3299, he is a "deferred officer," which is a military member who is considered for promotion to the grade of captain, major, or lieutenant colonel, but not recommended for promotion. 10 U.S.C. § 3303 (1959) (recodified at 10 U.S.C. §§ 631, 632 [1983 & Supp.1986]). A deferred officer is considered again by the next Selection Board considering officers of his grade and promotion list, and if recommended, he may be promoted, or if not recommended, must retire, if eligible, or if not eligible for retirement, he must retire upon his eligibility for retirement. 10 U.S.C. § 3303(c), (d), (1–3) (1959) (recodified at 10 U.S.C. §§ 631, 632).

Once selected for promotion, a Selection Board's recommendations are submitted to the Office of the Deputy Chief of Staff for Personnel, who in turn forwards its recommendations for promotion to the service secretary, who forwards them to the president for submission to the Senate. Ford, *supra*, at 151.[1]

Officers recommended and approved for promotion may be removed from the

---

1. Pursuant to the Armed Forces Act, appointments in commission grades, which include in ascending order 2nd lieutenant through major general, in the Regular Army shall be made by the president, by and with the advice and consent of the Senate. 10 U.S.C. § 3281(1)–(8) (1959); § 3284 (recodified at 10 U.S.C. § 421 [1983]) (1959).

Board's list by the president on the ground that the promotion-list officer, in the president's opinion, is not qualified for promotion. 10 U.S.C. § 3308 (1959) (recodified at 10 U.S.C. § 629 [1983]). However, any such removal by the president may not be arbitrary or capricious, and when such is the case, the military officer is entitled to judicial review. *Boyd v. United States*, 207 Ct.Cl. 1, *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1975); *Dorl v. United States*, 200 Ct.Cl. 626, *cert. denied*, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973).

Edward argues that because the president has the power to remove officers not qualified for promotion, his promotion to lieutenant colonel was not assured. The question then, is when may an officer be removed from a promotion list, once he has been selected and approved for promotion, with the advice and consent of the Senate?

Army Regulations provide that an officer may be removed from a promotion list "at any time" when it is found that disciplinary action has been taken against the officer. AR 624–100, ¶¶ 19(e), 20 (August 20, 1974; July 29, 1966). Further, the few cases wherein a military officer was selected and approved for promotion and subsequently was denied his commission prior to actual promotion indicate the kind of conduct for which removal is justified. William Martin, a Naval Reserve officer, was alleged to have "streaked" through the Biltmore Hotel Ballroom in New York City during a U.S. Naval Reserve dance and in the presence of fellow Naval Reservists "and their ladies." *Martin v. Warner*, 419 F.Supp. 133, 134 (E.D.N.Y.1976). Although Martin's promotion had been approved, he did

not receive his commission. In a second case, Captain Anthony D'Arco, U.S.M.C., had received notice via his commanding officer of his selection for promotion to major, pending confirmation by the Senate. The Senate eventually confirmed D'Arco's promotion, but while his name was pending before the Senate, D'Arco was charged with violations of the Uniform Code of Military Justice, alleging the theft of government building materials and wrongful appropriation of a government vehicle. In the meantime, D'Arco's promotion was approved. Following a court-martial, D'Arco's commission was withheld. His conviction was affirmed and promotion was denied. *D'Arco v. United States*, 441 F.2d 1173, 1174 (Ct.Cl.1971).[2]

Thus, once an officer has been selected and approved for promotion by the president, with the advice and consent of the Senate, and his name subsequently is published in the applicable military circular, the signing of his commission is a matter of routine, and the actual receipt of his commission is assured, absent disciplinary action for an egregious act, such as moral misconduct or felony charges.[3] A rebuttable presumption that Edward would receive his promotion attached upon official notice that he had been approved for promotion. The community's acquired rights were fixed and determined at the time Edward Grier's name was published in the 1975 AUS Lieutenant Colonel's Promotion List.

---

**2.** D'Arco was a U.S. Marine officer whose promotion was approved by the Secretary of the Navy Marine Corps regulations providing for removal of an officer from a promotion list provided in paragraph 1420–2a of the Marine Corps Manual (1961): "Action toward withholding an officer's promotion should be considered only for serious cause, for example, involvement in an incident which raises doubt as to his moral integrity, adversely reflects on his professional ability, or results in his being recommended for trial by court-martial. In such

cases commanders should not deliver the promotion, but report the circumstances to the Commandant of the Marine Corps." *D'Arco v. U.S.*, 441 F.2d at 174, n. 2.

**3.** Similarly, the receipt of retirement benefits themselves are conditioned upon the occurrence of an event; i.e., the military member must retire and remain eligible to receive the benefits. Accordingly, such judgments should and do recite "if, as and when received."