James Robert ELLIOTT, Appellant,

v.

Nelda Sherwood ELLIOTT, Appellee.

No. 3–89–232–CV.

Court of Appeals of Texas, Austin.

Oct. 10, 1990.

Russell A. Smith, Blanks, Greenfield & Rhodes, Temple, for appellant.

Fancy Jezek, Killeen, for appellee.

Before POWERS, CARROLL, and EARL W. SMITH *, JJ.

POWERS, Justice.

James Robert Elliott appeals from a trial-court order denying relief on his request to clarify the property division made in a divorce decree dissolving his marriage to Nelda Sherwood Elliott. We will affirm the trial-court order.

---

* Before Earl W. Smith, Justice (retired), Third Circuit Court of Appeals, sitting by assignment.

## THE CONTROVERSY

The Elliotts' divorce occurred in 1979 while James, an army officer, was on extended military service. The divorce decree awarded Nelda a portion of James' "gross military retirement benefits," to be calculated at his future retirement according to the following formula:

$$\tfrac{1}{2} \times \frac{208 \text{ months}}{\text{months of military service}} \times \text{gross monthly retirement payments.}$$

Other passages in the provision made the formula applicable to "all gross military retirement benefits received by" James, and to his "gross before-tax military retirement benefits."

In 1988, some nine years after the divorce, James retired from the army after 334 months of active service. He suffered from certain service-connected disabilities, and elected at retirement to receive $300 in disability benefits in lieu of a like amount that would otherwise have been included as part of his retirement pension. *See* 38 U.S.C.A. § 3105 (1979 & Supp.1990).

Following James' retirement, Nelda moved in the divorce cause, in 1989, that the court "construe and clarify" the decree by fixing a percentage to be applied to James' "gross military retirement benefits," a percentage that had been incalculable theretofore because James' total "months of military service," the divisor in the judgment formula, could not be known until his retirement. Nelda expressly requested such relief under the provisions of Tex.Fam.Code Ann. § 3.71 (Supp.1990), which authorizes post-divorce motions to "clarify" and "enforce" property divisions but expressly forbids any "order ... that amends, modifies, alters, or changes the actual, substantive division of property made or approved" in the decree. The statute, in addition, expressly *places such substantive revisions beyond the power of the trial court.*

James replied to Nelda's motion by filing an instrument he styled "First Amended Response to Motion for Clarification." In

*See* Tex.Gov't Code Ann. § 74.003 (1988).

the instrument, he described accurately the previous divorce proceedings and decree and recited that the parties had been unable "to negotiate an agreement concerning the proper division of said military retirement benefits." He conceded the necessity for "clarification" of the divorce decree, and prayed for "an *order of clarification* in conformity with [his] First Amended Response to Motion for Clarification." [1] The present controversy arises from the penultimate paragraph in the instrument, which reads as follows:

> [James] requests that the Court enter [an] Order awarding [Nelda] her proper percentage of *disposable retired or retainer pay* earned by [James] during the marriage, deducting from the gross retirement, disability compensation, life insurance allotment and taxes and survivor benefit plan deductions.

After considering the stipulated facts and hearing legal argument, the trial court fixed Nelda's percentage at 31.14% and, consistent with the decree, made the percentage applicable to James' "gross military retirement benefits." Thus, the court fixed the percentage as requested by Nelda (which is not in dispute), but declined to revise the divorce decree, as requested by James, by applying the percentage to his "disposable retired or retainer pay" instead of his "gross military retirement benefits" as stated in the decree. The court expressly declined that revision on the ground that it required a substantive revision of the decree, which the trial court was powerless to make under the express prohibition set out in Tex.Fam.Code Ann. § 3.71, *supra*.

James appeals on six assignments of error, asserting all are controlled by the same basic contention: that the "Former Spouses" Protection Act, 10 U.S.C.A. § 1408 (West 1983 & Supp.1990), as construed in *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) and *Berry v. Berry,* 780 S.W.2d 846 (Tex.App. 1989), reversed and remanded, 786 S.W.2d 672 (Tex.1990), required as a matter of law the relief he requested in his "First Amended Response to Motion for Clarification";

that is to say, his request that Nelda's percentage be applied only to his "disposable retired or retainer pay."

## DISCUSSION AND HOLDINGS

In *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the court held that a state court was powerless, under the supremacy clause, to divide federal military benefits. In response, Congress enacted 10 U.S.C.A. § 1408, *supra,* the Uniform Services Former Spouses' Protection Act, authorizing state courts to make such divisions to the extent of the servicemember's "disposable retired or retainer pay," which is defined by the statute as the net sum remaining after deduction from total retirement benefits any amounts representing disability benefits, income taxes, and certain other sums. *See* 10 U.S. C.A., *supra,* § 1408(a)(4). This is the net amount for which James contended in his response to Nelda's trial-court motion.

Following the enactment of § 1408, there arose a question concerning the *extent* to which the statute had resurrected the power of state courts to divide military retirement benefits incident to a divorce. In *Grier v. Grier,* 731 S.W.2d 931 (Tex.1987), the court concluded that § 1408 did indeed limit to "disposable retired pay" the amount of retirement benefits that might be *garnished* and *paid out* by the service secretaries pursuant to court orders, but the statute did *not* prohibit the *division* of gross military retirement benefits. *Grier,* 731 S.W.2d at 932–33. This construction of § 1408 was explicitly rejected in *Mansell.* There the court reviewed a California judgment that applied the same construction as did *Grier.* The Supreme Court of the United States, in *Mansell,* gave the statute a different construction, holding that § 1408 revived the power of state divorce courts only to the extent of permitting them to divide, incident to a divorce, the servicemember's "disposable retired or retainer pay." *Mansell,* 109 S.Ct. at 2031. James thus invokes *Mansell* in the present case, contending the trial court erred in his case by declining to make Nelda's percentage

---

**1.** We have supplied the emphasis in all quoted expressions.

applicable only to the net sum represented by his "disposable retired or retainer pay."

In *Berry, supra,* the Dallas court of appeals so applied *Mansell;* and it did so by giving retroactive effect to 10 U.S.C.A. § 1408 in a case in which a wife had moved to enforce a divorce decree that had awarded her a percentage of her former husband's gross military retirement benefits. The *Berry* trial court declined to enforce the division of disability retirement pay set out in the divorce decree. The court of appeals affirmed on the basis of *Mansell,* holding that the wife's invocation of the divorce decree, in a plea of res judicata, came too late when raised for the first time in her motion for rehearing in the trial court. *Berry,* 780 S.W.2d at 849, n. 3. The Supreme Court of Texas reversed, holding first that neither *Mansell* nor § 1408 was retroactive in its effect as a general rule, and that the retroactive effect given § 1408 in *Mansell* itself was possible only because the California court had determined that the law of that State permitted a party "to reopen the final settlement order." *Berry,* 786 S.W.2d at 673. But Texas law did *not* permit such substantive revisions of final divorce decrees; and the *Berry* decree, being regular on its face and within the jurisdiction of the court that rendered it, was not subject to the husband's collateral attack after he had allowed the decree to become final without appeal. *Id.* Concerning the wife's failure timely to plead res judicata, the Supreme Court stated in its own footnote that under Tex.R.Civ.P.Ann. 94 (1979) she had no obligation to do so, because her former husband had filed only general denials in the trial court, which did not put his wife on notice of his attempt to attack collaterally their final divorce decree. *Berry,* 786 S.W.2d at 673–74, n. 3.

We turn then to James' contentions in the present case. We hold that the decision by the Supreme Court of Texas, in *Berry,* forbids giving retroactive effect to § 1408 as it was construed in *Mansell.* When the Elliotts' decree became final in 1980, the statute had not been enacted and *Mansell* had not been decided. James does not contend his divorce decree was rendered without jurisdiction of the parties or the subject matter, nor does he contend it is not final or regular on its face. He contends only that § 1408 and *Mansell* should be given retroactive effect, but the Supreme Court of Texas expressly held to the contrary in *Berry.*

James contends in the alternative that the trial court was obligated to apply *Mansell* and § 1408 retroactively in the absence of any plea by Nelda that raised the affirmative defense of res judicata.[2] There are several reasons why this alternative contention must fail. We shall mention only two.

Firstly, James' theory requires two conclusions of law: (1) that Nelda was obliged by Rule 94 to plead the affirmative defense of res judicata in defense of the property division made in the divorce decree; *and* (2) that the trial court was bound as a matter of law to give retroactive effect to *Mansell* and § 1408, and alter the divorce decree accordingly, if Nelda failed to interpose the defense of res judicata. Even if we assume that James is correct respecting the first conclusion, he cannot be correct respecting the second because in *Berry* the Supreme Court of Texas held to the contrary.

Secondly, Nelda was *not* obliged in our view to plead the affirmative defense of res judicata by reason of the requirements of Rule 94. The present postjudgment controversy arose only in the context of Nelda's motion to clarify and enforce the divorce decree, and James' like request in his response to her motion. Rule 94 requires that "[i]n *pleading* to a preceding *pleading,* a party shall set forth affirmatively ... res judicata...." The

---

2. In consequence of the divorce court's explicit division of the military retirement benefits earned by Nelda and James' efforts during marriage, his reliance upon *Powell v. Powell,* 703 S.W.2d 434 (Tex.App.1985, writ ref'd n.r.e.), application for recall and stay denied, 475 U.S. 1092, 106 S.Ct. 1489, 89 L.Ed.2d 891 appeal dismissed, 476 U.S. 1180, 106 S.Ct. 2911, 91 L.Ed.2d 541 (1986), is misplaced on the issue of res judicata. In *Powell,* "[the] divorce judgment was silent as to any division of the military retirement pay." *Powell,* 703 S.W.2d at 435.

system of *pleadings* under the rules is composed of *petitions* and *answers,* as stated in Rule 45, each petition and answer being required to be "contained in one instrument of writing," as stated in Rule 46. *A motion is not a pleading.* "A motion is an application to the court for an order granting relief which is *not embraced within the prayer of a pleading.*" 3 McDonald, Texas Discovery Practice § 10.18, at 33 (rev. ed.1983). Even assuming the most liberal interpretation possible, we cannot conceive that James' "response" to Nelda's motion to clarify and enforce the divorce decree amounted to a "pleading" to which Nelda was bound by Rule 94 to plead in response the affirmative defense of res judicata.

For the reasons given, we affirm the post-judgment order of the trial court.

Affirmed.