**Wilbur WALLACE, Appellant,**

v.

**Mary Lee FULLER, Appellee.**

No. 3–91–079–CV.

Court of Appeals of Texas,
Austin.

June 10, 1992.

Penny A. Wilkov, Wilkov & Wilkov, Austin, for appellant.

Fred McLeroy, McLeroy & Alberts, P.C., Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and SMITH, JJ.

SMITH, Justice.

Wilbur Wallace appeals from a judgment partitioning forty-one percent of his military disability benefits to his ex-wife, Mary Lee Fuller. Wallace maintains that the Uniformed Services Former Spouses' Protection Act[1] removes the state court's jurisdiction to divide military disability benefits at divorce. We reluctantly agree and will reverse and render judgment in favor of Wallace.

1. 10 U.S.C.A. § 1408 (West 1983 & Supp.1992) ("Former Spouses' Protection Act" or "the Act").

Unless otherwise noted, all citations are to this version of the Act.

## THE CONTROVERSY

The question presented in this appeal is whether military disability benefits accrued during marriage are marital property divisible by the court in a divorce proceeding in Texas. To answer that question we review the Former Spouses' Protection Act and the United States Supreme Court's interpretation of that Act in *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1990).

## BACKGROUND

Wilbur Wallace enlisted in the United States Marine Corps Reserve in 1948. The next year, he transferred into the United States Air Force. Wallace served on active duty for twenty-four years before voluntarily retiring in 1973. During a medical examination associated with his retirement, Wallace was diagnosed as suffering permanent back and spinal injuries. An Air Force Physical Evaluation Board recommended that he be retired with sixty-percent disability. *See* 10 U.S.C.A § 1201 (West 1988 & Pamph.1992). On April 30, 1973, Wallace permanently retired from the Air Force with a sixty-percent disability.

Wallace was married for fifteen years of his military career; he and Mary Lee Fuller married September 13, 1951, and divorced October 4, 1966. Their divorce decree did not mention Wallace's military benefits.[2]

Absent specific language of preemption in a federal statute, Texas courts treat military retirement and disability benefits as community property subject to division upon dissolution of marriage. *See Busby v. Busby*, 457 S.W.2d 551 (Tex.1970) (disability benefits); *Kirkham v. Kirkham*, 335 S.W.2d 393 (Tex.Civ.App.1960, no writ) (retirement benefits). *But see Ex parte Burson*, 615 S.W.2d 192 (Tex.1981); *Ex parte Johnson*, 591 S.W.2d 453 (Tex.1979) (Veterans' Administration disability benefits are non-divisible separate property). When the divorce occurs before the service member's retirement, Texas courts have awarded to the non-member spouse a percentage of the service member's future benefits "if, as and when" they are received. *Cearley v. Cearley*, 544 S.W.2d 661, 665–66 (Tex.1976). The divorce court can distribute only that portion of the retirement benefits which accrued during marriage. Several Texas cases suggest formulas to calculate the community property portion, see *Berry v. Berry*, 647 S.W.2d 945 (Tex.1983), and *Taggart v. Taggart*, 552 S.W.2d 422 (Tex.1977). Frequently the court will award one-half of the community portion of these benefits to each spouse, but it has the discretion to award any portion of this community asset to either party. Tex.Fam.Code Ann. § 3.63(a) (Supp.1992). Community property not divided at divorce continues to be jointly owned by the former spouses, subject to a suit for partition. *Harrell v. Harrell*, 692 S.W.2d 876 (Tex.1985); *Busby*, 457 S.W.2d at 554. In a post-divorce partition of jointly-held assets, the court has discretion to divide the assets in any manner that is just and reasonable. Tex. Fam.Code Ann. § 3.91(a) (Supp.1992).

On December 17, 1984, eighteen years after the divorce and eleven-and-one-half years after Wallace retired, Fuller filed for partition of her ex-husband's military benefits. She served Wallace by publication, and on October 9, 1986, took a default judgment of partition. Wallace received a copy of the judgment on May 12, 1989. The trial court granted his bill of review and held a new partition hearing; Mary Lee Fuller again prevailed.

The trial court found that Fuller was a co-tenant of that portion of Wallace's "military retirement benefit and Air Force disability benefit" that accrued during their marriage. The court calculated that eighty-two percent of Wallace's military benefits accrued during the marriage, a calculation not challenged on appeal. The court then ordered Wallace to pay Fuller one half of this community portion of his benefits, calculated as follows: (1) forty-one percent of all benefits received from the date of retirement through the date of

---

2. Indeed, the divorce decree addressed only issues of conservatorship and support of the children of the marriage and did not award any property to either party.

trial, plus prejudgment interest (a total of $123,720); and (2) forty-one percent of all future benefits as they are received monthly.

In four points of error, Wallace alleges that the trial court erred: (1) by partitioning military disability benefits which are not included in the Former Spouses' Protection Act's definition of "disposable retired or retainer pay"; (2) by awarding prejudgment interest on the partition judgment; (3) by applying the prejudgment interest from the time of Wallace's retirement rather than from the filing of the partition action; and (4) by applying the state's community property law to military disability benefits received before June 25, 1981, the retroactive effective date of the Former Spouses' Protection Act.

### ANALYSIS

■ Wallace contends in his first point of error that the Former Spouses' Protection Act precludes a state court's authority to divide his military disability benefits. The following provision states the essence of the Act:

> Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

Former Spouses' Protection Act, § 1408(c)(1). Wallace argues that the Act expressly subjects disposable retired pay to state marital property laws but excludes military disability benefits from such treatment:

> (4) The term "disposable retired pay" means the total monthly retired pay to which a member is entitled less amounts which—
>
> . . . .
>
> (C) in the case of a member entitled to retired pay under Chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the

member's disability on the date when the member was retired. . . .

Former Spouses' Protection Act, § 1408(a)(4)(C). One-hundred percent of Wallace's benefits are disability benefits received pursuant to 10 U.S.C.A. § 1201 ("Chapter 61" benefits). We agree that the Act's definition of disposable retired pay does not include the military disability benefits at issue in this case. The question then presented is whether Texas courts may treat as community property *only* disposable retired pay, as that term is defined in the Act.

Prior to the United States Supreme Court's ruling in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), Texas courts considered military retirement benefits and Chapter 61 military disability benefits as community property subject to division upon divorce. *Busby*, 457 S.W.2d at 551–52, 554; *Kirkham*, 335 S.W.2d at 394. In *McCarty*, the Court prohibited the division of military retirement benefits upon divorce. The Court invited legislative correction if the Court had misinterpreted Congressional intent to preempt state marital property laws in this area. *McCarty*, 453 U.S. at 235–36, 101 S.Ct. at 2742–43.

Congress responded swiftly, enacting the Uniformed Services Former Spouses' Protection Act. *See* Department of Defense Authorization Act, 1983. Pub.L. No. 97–252, § 1001, 96 Stat. 730–735 (1982). The Former Spouses' Protection Act restored to the states their authority to apply marital property laws to military retirement benefits:

> Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

*See id.* at Sec. 1002, § 1408(c)(1). Texas courts viewed the Act as restoring community property principles to military retirement benefits. "Congress intended that the Act nullify the effect of *McCarty*, that

is, state courts were to apply state substantive law as if *McCarty* had never existed." *Trahan v. Trahan,* 682 S.W.2d 332, 335 (Tex.App.1984, writ ref'd n.r.e.), *cert. denied* 475 U.S. 1002, 106 S.Ct. 1171, 89 L.Ed.2d 291 (1986); *see also Koepke v. Koepke,* 732 S.W.2d 299 (Tex.1987); *Allison v. Allison,* 700 S.W.2d 914 (Tex.1985).

Fuller urges us to follow this interpretation of the Act. She suggests *McCarty* and the Act control only the divisibility of military retirement benefits. Fuller maintains that because military disability benefits were divisible in Texas before *McCarty,* state law in this area is unaffected by either *McCarty* or the Former Spouses' Protection Act. Texas courts have split on whether the Act affects divisibility of military disability benefits under our marital property laws. *Compare Conroy v. Conroy,* 706 S.W.2d 745, 748 (Tex.App.1986, no writ) ("We conclude that the military disability retirement pay is divisible community property.") *with Patrick v. Patrick,* 693 S.W.2d 52, 54 (Tex.App.1985, writ ref'd n.r.e.) ("10 U.S.C.S. § 1408 [Former Spouses' Protection Act] ... expressly exempted from division disability retirement benefits under 10 U.S.C.S. § 1201 [Chapter 61 military disability retirement benefits]"). Both of these cases were decided before *Mansell.*

Wallace argues that the Former Spouses' Protection Act only partially restores to the states their pre-*McCarty* jurisdiction over military benefits. Although the Act grants to states the power to divide retirement benefits, Wallace argues that the Act denies state courts the power to divide disability benefits upon divorce. He relies on *Mansell* as support for his position.

We note that the Texas Supreme Court has taken the position that the Former Spouses' Protection Act restores to the states all powers they had prior to *McCarty* to characterize and divide military benefits. *Grier v. Grier,* 731 S.W.2d 931, 932 (Tex.1987). The court specifically rejected the proposition that the Act limits the application of marital property laws to disposable retired pay as that term is defined in the Act. This interpretation of the Act, which would support Fuller's contentions, must be examined in light of the U.S. Supreme Court's holding in *Mansell.*

In *Mansell,* the Court examined the application of the Former Spouses' Protection Act to veterans' disability benefits received under Title 38. *Mansell,* 490 U.S. at 583, 109 S.Ct. at 2025. Mrs. Mansell argued, as does Fuller, that the Former Spouses' Protection Act simply restored to the states the authority they had exercised over military retirement benefits prior to *McCarty.* The Supreme Court rejected this argument, adopting instead the view that the Act only partially rejected *McCarty's* rule of federal preemption of state laws governing military benefits.

The *Mansell* Court distilled from statutory language the principle that "state courts have been granted the authority to treat disposable retired pay as community property; they have not been granted the authority to treat total retired pay as community property." *Id.* at 589, 109 S.Ct. at 2028. Because veterans' disability payments were expressly excluded from the definition of disposable retired pay, *see* Former Spouses' Protection Act, § 1408(a)(4)(B), the Court held that the California court was preempted from applying its marital property laws to divide retirement pay waived to secure veterans' disability benefits. *See id.* at 594–95, 109 S.Ct. at 2031–32.

We note that *Mansell* dealt with veterans' disability benefits under Title 38, while the present case addresses military disability benefits under Title 10 (Chapter 61 military disability benefits). There is a statutory rationale for finding the state law governing disposition of veterans' disability benefits is preempted; under federal law, veterans' disability benefits "shall not be assignable ... and such payments ... shall be exempt from taxation, ... the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever...." 38 U.S.C.A. § 5301 (West 1991). No such language governs Chapter 61 disability benefits. However, in *Mansell,* the Supreme Court ignored this anti-alienability ratio-

718

nale and held that the Former Spouses' Protection Act itself preempts state law that would divide veterans' disability benefits.

The *Mansell* Court reasoned that *McCarty* completely preempted the application of state community property laws to military benefits. Under this view, the states must thereafter look to an affirmative grant of authority to apply marital property laws to any military benefits. Examining the language of § 1408(c)(1) and § 1408(a)(4)(B), the Court found that the Former Spouses' Protection Act only partially restored state authority governing military benefits. It found a grant of such authority in § 1408(c)(1): "[A] court may treat disposable retired or retainer pay ... either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." But the Court next found the state courts' newly restored authority was restricted to "disposable retired and retainer pay." Because § 1408(a)(4)(B) specifically excludes from the term "disposable retired or retainer pay" any military retirement benefits waived in order to receive veterans' disability benefits, the Court determined that the Act precludes the states' authority to divide these benefits at divorce.

According to *Mansell*, state courts have authority to treat only "disposable retired pay" as marital property. Because the Act excludes both Chapter 61 disability benefits and veterans' disability benefits from its definition of "disposable retired pay," Former Spouses' Protection Act § 1408(a)(4)(C,D), we are unable to avoid the applicability of *Mansell's* preemption doctrine. By definition, the military disability pay at issue today is not disposable retired pay. *Mansell* explicitly rejects the Texas Supreme Court's interpretation of the Former Spouses' Protection Act in *Grier* and supports Wallace's position that a state court lacks the authority to treat military disability benefits as community property subject to division in a partition proceeding. We sustain Wallace's first point of error and need not address his remaining points.

The *Mansell* Court's reading that the Act limits state law to "disposable retired pay" defies the Act's stated legislative purpose—to protect former spouses. The legislative history confirms the Congressional desire to exorcise *McCarty* and "to restore the law to what it was when the courts were permitted to apply state divorce laws to military retired pay." *See* S.Rep. No. 502, 97th Cong., 2nd Sess. 5 (1982), *reprinted in* 1982 U.S.C.C.A.N. 1555, 1596, 1599. Justice O'Connor's dissent to *Mansell* notes the "harsh reality" of allowing a military member unilaterally to recharacterize the nature of his or her retirement as a disability benefit, and in so doing deprive a spouse of any claim to benefits accumulated during marriage. *Mansell*, 490 U.S. at 595, 601, 109 S.Ct. at 2032, 2035. We have here a similar "harsh reality," and we join the *Mansell* dissent in decrying a decision that permits Wallace to enjoy one hundred percent of the military benefits accumulated during marriage to the total exclusion of his former spouse's interest.

Wallace did not receive disability benefits due to a single injury that required his early exit from the Air Force. His medical records reveal that he first displayed symptoms of lower back pain in 1956, more than sixteen years prior to his voluntary retirement. At the time of his retirement in 1973, Wallace was eligible to retire based on more than twenty years of service. When the exit medical examination revealed that he was suffering from back pain, he was classified as sixty-percent disabled and retired pursuant to a disability. *See* 10 U.S.C.A § 1201. This entitled him to collect disability benefits free of federal income taxation. *See* I.R.C. § 104(a)(4) (West 1988 & Supp.1992). But these tax-exempt disability benefits were earned year-by-year during Wallace's military service. In fact, Wallace received the same dollar amount tax-free that he would have received as taxable retired pay but for his back symptoms. During eighty-two percent of his military service, Wallace was married to Fuller.

Under the *Mansell* ruling, Wallace, who has accepted tax-free benefits as compensa-

tion for his disability, is given the additional windfall of exempting these benefits from the Texas community property system. The *Mansell* Court ignores long-standing federal deference to state policy in the area of family law. "The whole subject of the domestic relations of husband and wife belongs to the laws of the states, and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 500 (1890). *See also Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979). Similarly, the Court disregards its own strict standard for determining when the supremacy clause may override state law. *See United States v. Yazell*, 382 U.S. 341, 352, 86 S.Ct. 500, 506–07, 15 L.Ed.2d 404 (1966). Finally, it cavalierly ignores the equities of its decision. We cannot believe that Congress intended this result when it enacted the Former Spouses' Protection Act. Nevertheless, we acknowledge our duty to follow *Mansell's* holding that the Act precludes a Texas court's authority to divide any military benefits other than "disposable retired pay."

## CONCLUSION

In light of *Mansell*, the trial court improperly partitioned Wilbur Wallace's military disability benefits. We reverse the judgment of the trial court and render judgment that Mary Lee Fuller take nothing in her partition suit.

Reversed and Rendered