WALLACE 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-079-CV





WILBUR WALLACE,



 APPELLANT


vs.




MARY LEE FULLER,



 APPELLEE

 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT



NO. 372,659, HONORABLE TRUMAN ROBERTS, JUDGE PRESIDING



 




 Wilbur Wallace appeals from a judgment partitioning forty-one percent of his
military disability benefits to his ex-wife, Mary Lee Fuller. Wallace maintains that the Uniformed
Services Former Spouses' Protection Act (1) removes the state court's jurisdiction to divide military
disability benefits at divorce. We reluctantly agree and will reverse and render judgment in favor
of Wallace.



THE CONTROVERSY



 The question presented in this appeal is whether military disability benefits accrued
during marriage are marital property divisible by the court in a divorce proceeding in Texas. To
answer that question we review the Former Spouses' Protection Act and the United States
Supreme Court's interpretation of that Act in Mansell v. Mansell, 490 U.S. 581 (1990).



BACKGROUND



 Wilbur Wallace enlisted in the United States Marine Corps Reserve in 1948. The
next year, he transferred into the United States Air Force. Wallace served on active duty for
twenty-four years before voluntarily retiring in 1973. During a medical examination associated
with his retirement, Wallace was diagnosed as suffering permanent back and spinal injuries. An
Air Force Physical Evaluation Board recommended that he be retired with sixty-percent disability. 
See 10 U.S.C.A § 1201 (West 1988 & Pamph. 1992). On April 30, 1973, Wallace permanently
retired from the Air Force with a sixty-percent disability. 

 Wallace was married for fifteen years of his military career; he and Mary Lee
Fuller married September 13, 1951, and divorced October 4, 1966. Their divorce decree did not
mention Wallace's military benefits. (2)

 Absent specific language of preemption in a federal statute, Texas courts treat
military retirement and disability benefits as community property subject to division upon
dissolution of marriage. See Busby v. Busby, 457 S.W.2d 551 (Tex. 1970) (disability benefits);
Kirkham v. Kirkham, 335 S.W.2d 393 (Tex. Civ. App. 1960, no writ) (retirement benefits). But
see Ex parte Burson, 615 S.W.2d 192 (Tex. 1981); Ex parte Johnson, 591 S.W.2d 453 (Tex.
1979) (Veterans' Administration disability benefits are non-divisible separate property). When
the divorce occurs before the service member's retirement, Texas courts have awarded to the non-member spouse a percentage of the service member's future benefits "if, as and when" they are
received. Cearley v. Cearley, 544 S.W.2d 661, 665-66 (Tex. 1976). The divorce court can
distribute only that portion of the retirement benefits which accrued during marriage. Several
Texas cases suggest formulas to calculate the community property portion, see Berry v. Berry, 647
S.W.2d 945 (Tex. 1983), and Taggart v. Taggart, 552 S.W.2d 422 (Tex. 1971). Frequently the
court will award one-half of the community portion of these benefits to each spouse, but it has the
discretion to award any portion of this community asset to either party. Tex. Fam. Code Ann.
§ 3.63(a) (Supp. 1992). Community property not divided at divorce continues to be jointly owned
by the former spouses, subject to a suit for partition. Harrell v. Harrell, 692 S.W.2d 876 (Tex.
1985); Busby, 457 S.W.2d at 554. In a post-divorce partition of jointly-held assets, the court has
discretion to divide the assets in any manner that is just and reasonable. Tex. Fam. Code Ann.
§ 3.91(a) (Supp. 1992).

 On December 17, 1984, eighteen years after the divorce and eleven-and-one-half
years after Wallace retired, Fuller filed for partition of her ex-husband's military benefits. She
served Wallace by publication, and on October 9, 1986, took a default judgment of partition. 
Wallace received a copy of the judgment on May 12, 1989. The trial court granted his bill of
review and held a new partition hearing; Mary Lee Fuller again prevailed. 

 The trial court found that Fuller was a co-tenant of that portion of Wallace's
"military retirement benefit and Air Force disability benefit" that accrued during their marriage. 
The court calculated that eighty-two percent of Wallace's military benefits accrued during the
marriage, a calculation not challenged on appeal. The court then ordered Wallace to pay Fuller
one half of this community portion of his benefits, calculated as follows:  (1) forty-one percent
of all benefits received from the date of retirement through the date of trial, plus prejudgment
interest (a total of $123,720); and (2) forty-one percent of all future benefits as they are received
monthly. 

 In four points of error, Wallace alleges that the trial court erred:  (1) by partitioning
military disability benefits which are not included in the Former Spouses' Protection Act's
definition of "disposable retired or retainer pay"; (2) by awarding prejudgment interest on the
partition judgment; (3) by applying the prejudgment interest from the time of Wallace's retirement
rather than from the filing of the partition action; and (4) by applying the state's community
property law to military disability benefits received before June 25, 1981, the retroactive effective
date of the Former Spouses' Protection Act.

 


ANALYSIS



 Wallace contends in his first point of error that the Former Spouses' Protection Act
precludes a state court's authority to divide his military disability benefits. The following
provision states the essence of the Act:



Subject to the limitations of this section, a court may treat disposable retired pay
payable to a member for pay periods beginning after June 25, 1981, either as
property solely of the member or as property of the member and his spouse in
accordance with the law of the jurisdiction of such court.



Former Spouses' Protection Act, § 1408(c)(1). Wallace argues that the Act expressly subjects
disposable retired pay to state marital property laws but excludes military disability benefits from
such treatment:



(4) The term "disposable retired pay" means the total monthly retired pay to
which a member is entitled less amounts which --


 . . . .


 (C) in the case of a member entitled to retired pay under Chapter 61 of this
title, are equal to the amount of retired pay of the member under that
chapter computed using the percentage of the member's disability on the
date when the member was retired . . . .



Former Spouses' Protection Act, § 1408 (a)(4)(C). One-hundred percent of Wallace's benefits
are disability benefits received pursuant to 10 U.S.C.A. § 1201 ("Chapter 61" benefits). We
agree that the Act's definition of disposable retired pay does not include the military disability
benefits at issue in this case. The question then presented is whether Texas courts may treat as
community property only disposable retired pay, as that term is defined in the Act.

 Prior to the United States Supreme Court's ruling in McCarty v. McCarty, 453 U.S.
210 (1981), Texas courts considered military retirement benefits and Chapter 61 military disability
benefits as community property subject to division upon divorce. Busby, 457 S.W.2d at 551-52,
554; Kirkham, 335 S.W.2d at 394. In McCarty, the Court prohibited the division of military
retirement benefits upon divorce. The Court invited legislative correction if the Court had
misinterpreted Congressional intent to preempt state marital property laws in this area. McCarty,
453 U.S. at 235-36. 

 Congress responded swiftly, enacting the Uniformed Services Former Spouses'
Protection Act. See Department of Defense Authorization Act, 1983. Pub. L. No. 97-252,
§ 1001, 96 Stat. 730-735 (1982). The Former Spouses' Protection Act restored to the states their
authority to apply marital property laws to military retirement benefits:



Subject to the limitations of this section, a court may treat disposable retired pay
payable to a member for pay periods beginning after June 25, 1981, either as
property solely of the member or as property of the member and his spouse in 

accordance with the law of the jurisdiction of such court.



See id. at Sec. 1002, § 1408(c)(1). Texas courts viewed the Act as restoring community property
principles to military retirement benefits. "Congress intended that the Act nullify the effect of
McCarty, that is, state courts were to apply state substantive law as if McCarty had never existed." 
Trahan v. Trahan, 682 S.W.2d 332, 335 (Tex. App. 1984, writ ref'd n.r.e.), cert. denied 475
U.S. 1002 (1986); see also Koepke v. Koepke, 732 S.W.2d 299 (Tex. 1987); Allison v. Allison,
700 S.W.2d 914 (Tex. 1985).

 Fuller urges us to follow this interpretation of the Act. She suggests McCarty and
the Act control only the divisibility of military retirement benefits. Fuller maintains that because
military disability benefits were divisible in Texas before McCarty, state law in this area is
unaffected by either McCarty or the Former Spouses' Protection Act. Texas courts have split on
whether the Act affects divisibility of military disability benefits under our marital property laws. 
Compare Conroy v. Conroy, 706 S.W.2d 745, 748 (Tex. App. 1986, no writ) ("We conclude that
the military disability retirement pay is divisible community property.") with Patrick v. Patrick,
693 S.W.2d 52, 54 (Tex. App. 1985, writ ref'd n.r.e.) ("10 U.S.C.S. § 1408 [Former Spouses'
Protection Act] . . . expressly exempted from division disability retirement benefits under 10
U.S.C.S § 1201 [Chapter 61 military disability retirement benefits]"). Both of these cases were
decided before Mansell.

 Wallace argues that the Former Spouses' Protection Act only partially restores to
the states their pre-McCarty jurisdiction over military benefits. Although the Act grants to states
the power to divide retirement benefits, Wallace argues that the Act denies state courts the power
to divide disability benefits upon divorce. He relies on Mansell as support for his position. 

 We note that the Texas Supreme Court has taken the position that the Former
Spouses' Protection Act restores to the states all powers they had prior to McCarty to characterize
and divide military benefits. Grier v. Grier, 731 S.W.2d 931, 932 (Tex. 1987). The court
specifically rejected the proposition that the Act limits the application of marital property laws to
disposable retired pay as that term is defined in the Act. This interpretation of the Act, which
would support Fuller's contentions, must be examined in light of the U.S. Supreme Court's
holding in Mansell.

 In Mansell, the Court examined the application of the Former Spouses' Protection
Act to veterans' disability benefits received under Title 38. Mansell, 490 U.S. at 583. 
Mrs. Mansell argued, as does Fuller, that the Former Spouses' Protection Act simply restored to
the states the authority they had exercised over military retirement benefits prior to McCarty. The
Supreme Court rejected this argument, adopting instead the view that the Act only partially
rejected McCarty's rule of federal preemption of state laws governing military benefits.

 The Mansell Court distilled from statutory language the principle that "state courts
have been granted the authority to treat disposable retired pay as community property; they have
not been granted the authority to treat total retired pay as community property." Id. at 589. 
Because veterans' disability payments were expressly excluded from the definition of disposable
retired pay, see Former Spouses' Protection Act, § 1408(a)(4)(B), the Court held that the
California court was preempted from applying its marital property laws to divide retirement pay
waived to secure veterans' disability benefits. See id. at 594-95. 

 We note that Mansell dealt with veterans' disability benefits under Title 38, while
the present case addresses military disability benefits under Title 10 (Chapter 61 military disability
benefits). There is a statutory rationale for finding the state law governing disposition of veterans'
disability benefits is preempted; under federal law, veterans' disability benefits "shall not be
assignable . . . and such payments . . . shall be exempt from taxation, . . . the claim of creditors,
and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process
whatever . . . ." 38 U.S.C.A. § 5301 (West 1991). No such language governs Chapter 61
disability benefits. However, in Mansell, the Supreme Court ignored this anti-alienability
rationale and held that the Former Spouses' Protection Act itself preempts state law that would
divide veterans' disability benefits.

 The Mansell Court reasoned that McCarty completely preempted the application
of state community property laws to military benefits. Under this view, the states must thereafter
look to an affirmative grant of authority to apply marital property laws to any military benefits. 
Examining the language of § 1408(c)(1) and § 1408(a)(4)(B), the Court found that the Former
Spouses' Protection Act only partially restored state authority governing military benefits. It
found a grant of such authority in § 1408(c)(1):  "[A] court may treat disposable retired or retainer
pay . . . either as property solely of the member or as property of the member and his spouse in
accordance with the law of the jurisdiction of such court." But the Court next found the state
courts' newly restored authority was restricted to "disposable retired and retainer pay." Because
§ 1408(a)(4)(B) specifically excludes from the term "disposable retired or retainer pay" any
military retirement benefits waived in order to receive veterans' disability benefits, the Court
determined that the Act precludes the states' authority to divide these benefits at divorce.

 According to Mansell, state courts have authority to treat only "disposable retired
pay" as marital property. Because the Act excludes both Chapter 61 disability benefits and
veterans' disability benefits from its definition of "disposable retired pay," Former Spouses'
Protection Act § 1408(a)(4)(C,D), we are unable to avoid the applicability of Mansell's
preemption doctrine. By definition, the military disability pay at issue today is not disposable
retired pay. Mansell explicitly rejects the Texas Supreme Court's interpretation of the Former
Spouses' Protection Act in Grier and supports Wallace's position that a state court lacks the
authority to treat military disability benefits as community property subject to division in a
partition proceeding. We sustain Wallace's first point of error and need not address his remaining
points.

 The Mansell Court's reading that the Act limits state law to "disposable retired pay"
defies the Act's stated legislative purpose -- to protect former spouses. The legislative history
confirms the Congressional desire to exorcise McCarty and "to restore the law to what it was
when the courts were permitted to apply state divorce laws to military retired pay." See S. Rep.
No. 502, 97th Cong., 2nd Sess. 5 (1982), reprinted in 1982 U.S.C.C.A.N. 1596, 1599. Justice
O'Connor's dissent to Mansell notes the "harsh reality" of allowing a military member unilaterally
to recharacterize the nature of his or her retirement as a disability benefit, and in so doing deprive
a spouse of any claim to benefits accumulated during marriage. Mansell, 490 U.S. at 595, 601. 
We have here a similar "harsh reality," and we join the Mansell dissent in decrying a decision that
permits Wallace to enjoy one hundred percent of the military benefits accumulated during
marriage to the total exclusion of his former spouse's interest. 

 Wallace did not receive disability benefits due to a single injury that required his
early exit from the Air Force. His medical records reveal that he first displayed symptoms of
lower back pain in 1956, more than sixteen years prior to his voluntary retirement. At the time
of his retirement in 1973, Wallace was eligible to retire based on more than twenty years of
service. When the exit medical examination revealed that he was suffering from back pain, he
was classified as sixty-percent disabled and retired pursuant to a disability. See 10 U.S.C.A
§ 1201. This entitled him to collect disability benefits free of federal income taxation. See I.R.C.
§ 104(a)(4) (West 1988 & Supp. 1992). But these tax-exempt disability benefits were earned year-by-year during Wallace's military service. In fact, Wallace received the same dollar amount tax-free that he would have received as taxable retired pay but for his back symptoms. During eighty-two percent of his military service, Wallace was married to Fuller.

 Under the Mansell ruling, Wallace, who has accepted tax-free benefits as
compensation for his disability, is given the additional windfall of exempting these benefits from
the Texas community property system. The Mansell Court ignores long-standing federal
deference to state policy in the area of family law. "The whole subject of the domestic relations
of husband and wife belongs to the laws of the states, and not to the laws of the United States."
In re Burrus, 136 U.S. 586, 593-94 (1890). See also Hisquierdo v. Hisquierdo, 439 U.S. 572,
581 (1979). Similarly, the Court disregards its own strict standard for determining when the
supremacy clause may override state law. See United States v. Yazell, 382 U.S. 341, 352 (1966). 
Finally, it cavalierly ignores the equities of its decision. We cannot believe that Congress
intended this result when it enacted the Former Spouses' Protection Act. Nevertheless, we
acknowledge our duty to follow Mansell's holding that the Act precludes a Texas court's authority
to divide any military benefits other than "disposable retired pay."



CONCLUSION



 In light of Mansell, the trial court improperly partitioned Wilbur Wallace's military
disability benefits. We reverse the judgment of the trial court and render judgment that Mary Lee
Fuller take nothing in her partition suit.



 

 Bea Ann Smith, Justice

[Before Chief Justice Carroll, Justices Aboussie, and B. A. Smith]

Filed: June 10, 1992

Reversed and Rendered

[Publish]

1. [1]  10 U.S.C.A. § 1408 (West 1983 & Supp. 1992) ("Former Spouses' Protection Act" or
"the Act"). Unless otherwise noted, all citations are to this version of the Act.
2.   Indeed, the divorce decree addressed only issues of conservatorship and support of
the children of the marriage and did not award any property to either party.