## Richmond

### HERBERT S. GLASSMAN V. FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER, ETC.

April 27, 1970.

Record No. 7082.

Present, All the Justices.

*Frederick T. Stant, Jr. (Edwin Jay Rafal, on brief), for plaintiff in error.

*Daniel W. Wilkinson, Jr. (West & Wilkinson, on brief), for defendant in error.

SNEAD, C. J., delivered the opinion of the court.

Herbert S. Glassman, defendant, appeals from three judgments entered on April 11, 1968 against him in favor of Federal Deposit Insurance Corporation, Receiver of Crown Savings Bank, Newport News, Virginia, plaintiff. The judgments, aggregating $25,000, were rendered on three negotiable notes made by defendant.

By agreement the three motions for judgment were tried together before the court sitting without a jury. The evidence consisted of certain exhibits, the deposition of Leroy F. Ridley, president of Crown Savings, and the testimony of Glassman and Richard B. Keeley.

The three notes involved will be referred to for convenience as notes Nos. 1, 2 and 3. Note No. 1, dated August 15, 1963, is in the sum of $10,000 and payable to the order of "George Vantraub" six months after date at The Seaboard Citizens National Bank of Norfolk. Note No. 2, dated August 15, 1963, is in the sum of $10,000 and payable to the order of bearer six months after date at Norfolk, Virginia. It shows a credit of $5,000. Note No. 3, dated September 1, 1963, is in the sum of $10,000 and payable to the order of bearer six months after date at Bankers Trust Company, New York City. All three notes bear the endorsement of George Vantraub.

Two of the notes were delivered to Crown Savings Bank through its president, Leroy Ridley, by Andrew Goldberg and the third by one Crawley, an associate of Goldberg. Crown Savings took these notes, before maturity, as collateral security for loans to Crawley and Allen Mirman, who was also associated with Goldberg. Glassman testified, as did Ridley, that no notice was sent to Glassman that Crown Savings held these notes.

In February of 1964, Ridley sent note No. 2 to Virginia National Bank in Norfolk for collection. He testified that Goldberg told him that that was the bank to which the notes should be sent for collection. The notice sent to Glassman by Virginia National Bank stated the amount due to be $10,000 and bore the instruction "Remit: Crown Savings Bank". Glassman testified that he regularly received notices from Virginia National, in the amount of $5,000 plus interest, on a note held by Virginia National, and made by the Golden Key Club, of which Glassman was the operator. He stated that he paid $5,000 on note No. 2 by mistake, thinking it was on the Golden Key Club note. He also stated that he never read the instruction contained in the notice concerning remittance to Crown Savings Bank. It appears that this instruction is the only notice Glassman might have had that Crown Savings held the three notes.

The testimony of Ridley shows that Crown Savings loaned money amounting to approximately $730,000 in various loans either directly to Goldberg or on which Goldberg was endorser or guarantor, or that he had brokered. Goldberg and his associates defaulted on a substantial portion of this indebtedness and Crown Savings went into

receivership. Federal Deposit Insurance Corporation as receiver became successor to the interests of Crown Savings.

Plaintiff brought actions on the three notes, totaling at the time of trial $25,000, allowing for the $5,000 credit on Note No. 2. Glassman relied on the defense that the notes were given for gambling losses and therefore imposed upon him no liability. He also filed a cross-claim for the $5,000 paid on note No. 2.

█ The trial court held, first, that if the notes were given for gambling losses, they would be invalid under Code, § 11-14, even in the hands of a holder in due course. Code, § 11-14 declares, in part, that "All * * * contracts and securities whereof the whole or any part of the consideration be money or other valuable thing, won * * * at any game * * * shall be utterly void."

In *Lynchburg Nat'l Bank* v. *Scott*, 91 Va. 652, 22 S.E. 487 (1895), we held that a usurious note, which the applicable Virginia statute declared "illegal", could be enforced against the maker by a holder in due course. We recognized, however, that the holder could not have enforced the note if the statute had declared it "void", rather than illegal. To the same effect is *Moore* v. *Potomac Sav. Bank*, 160 Va. 597, 169 S.E. 922 (1933). For cases involving the invalidity of notes given to cover gambling losses, see Annot. 53 A.L.R. 2d 345, 37 A.L.R. 698 and 8 A.L.R. 314.

In a note appended to the opinion in the *Lynchburg Nat'l Bank* case appearing in 1 Va. L.Reg. 357, 364, the associate editor, William Minor Lile, stated: "Probably the only remaining instance in Virginia of negotiable paper being avoided in the hands of a *bona fide* holder for value, by reason of statutory illegality, is that of an instrument founded upon a gaming consideration."

We therefore agree with the trial court's holding that even though Crown Savings was a holder in due course under § 6-404, (repealed 1964, effective 1966) Code 1950,[1] the note should be held invalid under Code, § 11-14, if Glassman proved that the notes were given for gambling losses.

█ The trial court found, however, that Glassman had failed to establish by a preponderance of the evidence that the notes were given for gambling losses. It therefore entered judgment against Glassman on all three notes. The crucial issue, then, is whether the trial court erred in finding that Glassman had failed to establish that the notes were given for a gambling consideration.

---

[1] This case is governed by the former Negotiable Instruments Law and not by the Uniform Commercial Code, which became effective in Virginia on January 1, 1966.

Glassman testified that the gambling losses resulted from a gin rummy game that took place during August and September of 1963 at the Golden Triangle Motor Hotel in Norfolk, Virginia. He stated that his losses totaled about $100,000. The participants in the game, besides Glassman, were George Vantraub, and two Halprin brothers, Jack and Burt.

After losing a substantial sum, and after the notes were given, Glassman discovered that the cards with which the game had been played were marked.

Richard B. Keeley testified for Glassman. Keeley at the time of the game was manager of the Golden Triangle Motor Hotel. He stated that of his own knowledge he knew of the gin game and had been present at some of the sessions. He corroborated Glassman's testimony as to the participants in the game, the general period during which it was played, and that the cards were marked. He stated that he saw scores kept and knew that Glassman was losing. He also testified that he did not actually see the notes or any money passed.

Glassman stated that after he had lost all his cash "I had no money coming in, and I gave these notes, and it was a gambling debt". On advice of counsel Glassman notified the banks with which he did business not to honor the notes. Crown Savings was not among those banks.

The plaintiff offered no evidence to rebut that of the defendant.

In its letter opinion the trial court stated that "The defendant's evidence was vague and unsatisfactory as to time, place, persons present and other circumstances surrounding gambling games in which he participated; although defendant's testimony inferred that these games continued over a substantial period of time, he fails to explain why two notes in the sum of $10,000 each were given on the same date (August 15, 1963). Nor does he explain why one of these was payable to George Vantraub and the other to bearer; his explanation of the delay in asserting this defense to the notes is unsatisfactory; he fails to explain why he made no attempt to locate or retrieve the notes or file an appropriate proceeding to have them nullified.

"Where the defendant relies upon his own violation of the law as a defense to these actions, it seems only proper that he should be required to support his defense by a preponderance of the evidence. This he has failed to do."

Although the trial court sat as a jury and heard the witnesses (with the exception of Ridley) we cannot agree with the determination that Glassman failed to prove by a preponderance of the evidence the facts

on which his defense rests. To establish his case by a preponderance it is not necessary that he eliminate every doubt or question in the mind of the trier of fact. In our view his testimony established the existence of the gin game, its participants, its location, the general period during which it was played and the fact that it was rigged against him. All this was corroborated by Keeley. Glassman stated that he gave the notes for a portion of his losses in this game. The notes are dated within the period during which the game was played and all three bear the endorsement of one of the participants, George Vantraub. Neither Glassman nor Keeley was impeached and their testimony is not inherently incredible. There is no evidence to contradict that of Glassman. In view of these facts we hold that as a matter of law Glassman established by a preponderance of the evidence that the notes were given for his gambling losses.

We therefore reverse the three judgments in favor of Federal Deposit Insurance Corporation, Receiver of Crown Savings Bank, and enter judgment for Herbert S. Glassman on the motions for judgment filed against him. Since Glassman gave no reason either in his brief or at oral argument why the judgment against him on his cross-claim for the $5,000 paid on note No. 2 should be disturbed, we treat that point as abandoned and do not disturb the judgment on the cross-claim.

*Reversed and final judgment.*