## Richmond

## EVA M. KENNEDY

### v.

## ANNANDALE BOYS CLUB, INC.

November 26, 1980.

Record No. 781706.

Present: All the Justices.

*Marc A. Busman* (*William L. Schmidt; Schmidt & Busman,* on brief), for appellant.
*Blaine P. Friedlander* for appellee.

PER CURIAM.

Eva M. Kennedy sought to recover a judgment against Annandale Boys Club, Inc., for $6,000, alleging that she won this sum in a bingo game conducted by Boys Club. Defendant's demurrer to plaintiff's motion for judgment was sustained upon the ground that the contract plaintiff sought to enforce was void, and therefore unenforceable.

The facts in this case are not in controversy. On September 11, 1977, plaintiff participated in one of Boys Club's bingo games called "winner take all." Mrs. Kennedy alleges that she was the first player to complete her bingo card in the required manner and was entitled to be awarded the prize of $6,000. An employee of the Boys Club checked Mrs. Kennedy's card and declared her to be the winner. About fifteen minutes later the employee announced that a mistake had been made. It appears that two other players had lodged a protest, claiming that plaintiff had not in fact properly completed her card. At that time it was impossible for the club to make an accurate determination of the conflicting claims. Accordingly, it refused to pay Mrs. Kennedy, but did offer her a consolation prize of $100, which she refused.

The Annandale Boys Club is a Virginia nonprofit organization which conducts bingo games for cash and other prizes as part of its fund raising activities. It concedes that it entered into an oral contract with plaintiff to play bingo, that she did play, and that for a brief period of time both she and defendant assumed that she was the winner and was entitled to the prize.

The sole issue is whether Mrs. Kennedy can use the courts of Virginia to enforce her gaming contract. The trial court held that she could not, and we agree.

Our decision here is controlled by Virginia Code § 11-14 which provides, in part, that "all contracts and securities whereof the whole or any part of the consideration be money or other valuable thing, won, . . . at any game, . . . shall be utterly void." This section of the Code has remained in its present form for a period of more than fifty years.

Code § 18.2-335, in effect in September 1977, provided, in per-

tinent part, that the Article of the Code prohibiting illegal gambling should not apply to any bingo game conducted by a volunteer fire department or rescue squad, or certain other nonprofit organizations operated exclusively for religious, charitable, scientific, literary, community, or educational purposes. By statute, the General Assembly removed the taint of illegality from the operation of a bingo game by certain organizations and under certain conditions, and the taint of illegality from participating in and playing bingo, and in giving and receiving prizes and consideration incident thereto.

However, the General Assembly did not repeal or amend Code § 11-14. While its action may be construed as legalizing bingo in that no criminal sanctions can be imposed upon those who either conduct or play the game, it nevertheless did not render valid and enforceable the contract between the operators of the game and those who play. The statute is couched in plain, unambiguous, and strict language. A gaming contract in Virginia is held to be a contract that is *utterly void*. A void contract is a complete nullity, one that has no legal force or binding effect. It is one which never had any legal existence or effect, and one which cannot in any manner have life breathed into it. The legislature did not content itself with decreeing gaming contracts to be void but used the language *utterly void*, meaning void "to an absolute or extreme degree: to the full extent." *Webster's Third International Dictionary*, 2526 (1966). In *Cohen* v. *Mayflower Corp.*, 196 Va. 1153, 1160, 86 S.E.2d 860, 864 (1955), we said: "It is, of course, elementary that 'A void contract is no contract at all; it binds no one and is a mere nullity. Accordingly, an action cannot be maintained for damages for its breach.' . . . [Citations omitted.]

In *Glassman* v. *F.D.I.C.*, 210 Va. 650, 173 S.E.2d 843 (1970), we had occasion to construe Code § 11-14. There, a holder in due course of negotiable notes was denied a recovery thereon. It was established that the basis of the consideration for the notes was gambling. We held that notwithstanding the holder was a holder in due course, the notes were invalid and unenforceable under Code § 11-14, it having been established that they were given for gambling losses.

Kennedy argues that § 18.2-335 is an exception to the penal provision against gambling and cites cases from other jurisdictions to the effect that a contract made as a result of such an exception to a penal provision against wagering is legally enforceable in court. *Mehle* v. *McLean*, 19 La. App. 425, 139 So. 681 (1932); *Brennan*

v. *Brighton Beach Racing Ass'n,* 9 N.Y.S. 220 (1890). The cases relied upon by Kennedy are inapposite for the reason that they involved construction of statutes and interpretation of case law peculiar to their own jurisdictions.

    ■ We acknowledge the equity of Kennedy's position that having participated in a game permitted and conducted in the manner provided by statute by an authorized organization, and having paid her money for the privilege of participating and having won, she should be entitled to reap the benefit and collect her prize. The problem is that while the General Assembly approved the operation of bingo games and the playing of the games under certain controlled conditions, it did not see fit to make available the state's legal machinery necessary to enforce gaming contracts. On the contrary, it expressly withheld the right to enforce a gaming contract by a civil action. Code § 18.2-325 declared all gambling activities illegal and subject to criminal sanctions, excepting, however, certain sporting events (§ 18.2-333), games of chance conducted in a private residence (§ 18.2-334), and bingo games and raffles conducted by certain organizations (§ 18.2-335). While the three exceptions to the Code removed the offenses therein described from the category of criminal offenses, the statutes did not validate gaming contracts entered into by the participants in any of the excepted activities.*

Boys Club says that "[i]t would be better, perhaps, if all gaming contracts were either legalized or banned completely," and it agrees that absent Code § 11-14 Kennedy would have had the right to assert her action in contract. We express no opinion on the action of the General Assembly in legalizing the operation of bingo or its failure at that time to amend Code § 11-14. We cannot assume that its actions were inadvertent.

---

* At its 1979 session the General Assembly of Virginia repealed Code §18.2-335 and enacted §§ 18.2-334.2 and 18.2-340.1, *et seq.,* relating to the conduct of bingo games, instant bingo, and raffles. 1979 Va. Acts, ch. 420. Although the amended statute has no application to the case under review, we note that Code §18.2-340.9(G) now provides:

> No organization shall award any prize money or any merchandise valued in excess of the following amounts: (i) No door prize shall exceed twenty-five dollars, (ii) no regular bingo or special bingo game shall exceed one hundred dollars, and (iii) no jackpot of any nature whatsoever shall exceed one thousand dollars. In no event shall any organization join with any other organization in establishing or contributing to the maintenance of any jackpot. The award of any such prize money shall not be deemed to be part of any gaming contract within the purview of § 11-14 of the Code of Virginia.

We find no merit in Kennedy's argument that the prohibition contained in Virginia Code § 11-14 has the effect of denying her due process or impairing her right to contract. The refusal of a state to permit the enforcement in its courts of a gaming contract presents no constitutional question, state or federal.

For the reasons assigned, we find no error in the judgment of the court below.

*Affirmed.*