# Thomas Coghill

## v.

# Boardwalk Regency Corporation, t/a Caesars

Record No. 891525

September 21, 1990

Present: All the Justices

*Gregory K. Pugh (Moody E. Stallings, Jr.; Stallings, Richardson & Rawls*, on brief), for appellant.
*George H. Heilig, Jr. (Debra L. Mosley; Heilig, McKenry, Fraim and Lollar*, on brief), for appellee.

JUSTICE RUSSELL delivered the opinion of the Court.

In a Virginia court, enforcement of a valid foreign judgment based upon a gambling debt was opposed on public-policy grounds. The court ruled that the mandate of the Full Faith and Credit Clause and its implementing statutes[1] prevailed over Virginia's strongly-expressed policy which prohibits the enforcement

---

[1] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the effect thereof." U.S. Const. art. IV, § 1.

In 1790, Congress provided that judgments "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." Act of May 26, 1790, c. 11, 1 Stat. 122. *See* present 28 U.S.C. 1738.

of gambling debts. The court entered a domestic judgment against the debtor. We agree with the trial court's analysis and affirm.

The essential facts are stipulated. Thomas Coghill incurred wagering debts at a casino in Atlantic City, New Jersey, operated by Boardwalk Regency Corporation, trading as Caesars. Wagering debts are enforceable in that jurisdiction. On March 8, 1989, Caesars obtained a default judgment against Mr. Coghill in the amount of $12,768.75 in the Superior Court of New Jersey, Atlantic City, Law Division.

On May 5, 1989, Caesars filed a notice and affidavit in the Circuit Court of the City of Virginia Beach for the docketing and enforcement of the New Jersey judgment pursuant to the Uniform Enforcement of Foreign Judgments Act, Code § 8.01-465.1, *et seq.* The defendant filed a motion to vacate the docketing of the New Jersey judgment on the ground that wagering is unlawful and contrary to the public policy of Virginia and that, under domestic law, debts founded on wagering are void *ab initio.* After hearing oral arguments and reviewing memoranda of law, the trial court, in a written opinion, held that the New Jersey judgment was entitled to enforcement in Virginia under the Full Faith and Credit Clause. The court entered a final order to that effect on September 18, 1989, and we granted the defendant an appeal.

■ The public policy of Virginia with respect to the legal enforcement of gambling debts could scarcely be more forcefully expressed. Code § 11-14 provides that all wagers, loans to pay wagers, and contracts to repay wagers "shall be utterly void." In *Kennedy* v. *Annandale Club*, 221 Va. 504, 272 S.E.2d 38 (1980), we held that this section rendered a gaming contract "a complete nullity, one that has no legal force or binding effect. It is one which never had any legal existence or effect, and one which cannot in any manner have life breathed into it." *Id.* at 506, 272 S.E.2d at 39. We held in *Glassman* v. *F.D.I.C.*, 210 Va. 650, 173 S.E.2d 843 (1970), that even a holder in due course is precluded, on public policy grounds, from recovering on a note originally given for a gambling debt. Indeed, the statutory scheme goes so far as to permit a losing gambler, in an action at law, to recover

---

In Virginia, Code § 8.01-389B. provides: "Every court of this Commonwealth shall give such records of courts not of this Commonwealth the full faith and credit given to them in the courts of the jurisdiction from whence they come."

money paid to the winner. Code § 11-15. These statutes have been in force, with little change, since the early 1700's.[2]

██ It is obvious that no judgment could have been obtained on Caesars' claim if its original action had been initiated in a Virginia court, *Kennedy, supra*, or, under diversity jurisdiction, in a federal court sitting in Virginia, *Resorts Intern. Hotel, Inc. v. Agresta*, 569 F. Supp. 24 (1983), *aff'd*, 725 F.2d 676 (4th Cir. 1984). Against that background, we examine the requirements of the Full Faith and Credit Clause.

██ The seminal decision was written for a divided Supreme Court by Justice Holmes in *Fauntleroy v. Lum*, 210 U.S. 230 (1908). There, a transaction resulting from gambling in cotton futures, void under Mississippi law, resulted in an arbitration award in favor of the creditor. Finding the debtor temporarily in Missouri, the creditor sued on the award, recovered a Missouri judgment, and sought to enforce it in Mississippi. *Id.* at 233-34. The Supreme Court of Mississippi refused to enforce the foreign judgment on grounds of the domestic illegality of the underlying transaction. The Supreme Court of the United States reversed, holding that the Missouri judgment was entitled to full faith and credit in Mississippi despite the requirements of local public policy. The Court made clear that the propriety of the underlying transaction was not the issue before the Mississippi court. Rather, the issue was the effect of the Missouri court's final judgment, which was conclusive as to all questions of law necessarily decided. *Id.* at 237-38. One such question was, of course, the enforceability of the underlying transaction.

██ The effect of the Full Faith and Credit Clause was to render the foreign judgment immune from reexamination for error in the domestic court. *Id.* at 237. Therefore, even if the Missouri court had erred with respect to the enforceability of the underlying transaction (by misperceiving the law of Mississippi) the remedy for that error was direct appeal, not collateral attack in the courts of a sister state. *Id.*

*Fauntleroy* was a five-to-four decision, but the Supreme Court has followed it consistently. *See Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430 (1943), *overruled on a different ground*, *Thomas v. Washington Gas Light Co.*, 448 U.S. 261 (1980); *Morris v. Jones*,

---

[2] *See* 1727, 4 Hen. Stats. at Large p. 214; 1748, 6 Hen. Stats. at Large p. 76 edit. 1752 c. 31 § 3 and edit. 1769 c. 25 § 3.

329 U.S. 545 (1947); *Union National Bank* v. *Lamb*, 337 U.S. 38, (1949). Thus, the rule of *Fauntleroy* is firmly entrenched, and we are bound by it.

█ It is true that a domestic court may always examine a foreign judgment for "want of jurisdiction over either the person or the subject-matter," *Fauntleroy*, 210 U.S. at 237, and that "there may be exceptional cases in which the judgment of one state may not override the laws and policy of another," *Magnolia Petroleum*, 320 U.S. at 438. Nevertheless, the Supreme Court held, in *Magnolia Petroleum*, that "this Court is the final arbiter of the extent of the exceptions . . . [a]nd . . . the actual exceptions have been few and far between . . . . We are aware of no such exception in the case of a money judgment rendered in a civil suit." *Id.* (Citations omitted.)

Indeed, in *Morris*, the Court observed that most controversies involving the Full Faith and Credit Clause arise where state policies differ, and if the Clause were not applied in those situations, it would fail where the need for it was the greatest. 329 U.S. at 553.

The reasoning of our own decisions has been to the same effect. In *Wallihan* v. *Hughes*, 196 Va. 117, 82 S.E.2d 553 (1954), suit was brought in Virginia for the enforcement of a Nevada divorce decree which incorporated a postnuptial agreement. The defendant objected on the ground that the agreement was made before separation, facilitated separation and divorce, and would therefore have been unenforceable in a Virginia court under the state of the law then existing. We refused to decide the question of enforceability, holding that whether the Nevada court was right or wrong, there was no question of the validity of its decree in Nevada. Citing *Fauntleroy*, we held that the Nevada court had "bestowed upon the contract the dignity of a judgment, and it now stands upon that higher plane." *Id.* at 127, 82 S.E.2d at 560 (citation omitted). We further observed that "[t]he assertion of a right under the full faith and credit clause of the Constitution is the assertion of a federal right, and its final determination rests with the Supreme Court of the United States." *Id.*

█ We reached the same conclusion in *Osborne* v. *Osborne*, 215 Va. 205, 207 S.E.2d 875 (1974), where we said that the federal constitutional mandate requires each state to give a foreign judgment at least the *res judicata* effect it would be accorded in the state in which it was rendered. *Id.* at 208, 207 S.E.2d at 879. We

added, "[s]ubject to rare exceptions, the full faith and credit rule applies *even though the sister state's judgment reflects policies hostile to those of the forum state." Id.* (citations omitted) (emphasis added).

There is no question that the New Jersey judgment is valid and enforceable under the laws of that state. The Full Faith and Credit Clause therefore requires us to accord it the same *res judicata* effect in Virginia as it would have in New Jersey. We have only the foreign judgment before us, not the underlying transaction on which it was based. For that reason, the trial court correctly refused to interpose Virginia's domestic public policy as an exception to the operation of the Full Faith and Credit Clause.

Accordingly, the judgment will be

*Affirmed.*