## CIRCUIT COURT OF THE CITY OF RICHMOND

Jerryl W. Abbott and
Stone Street Capital, Inc.

v.

Kenneth W. Thorson, Director
of the Virginia Lottery Department

July 16, 1992

Case No. HC-363–4

By Judge Randall G. Johnson

In this action, petitioners seek entry of an order authorizing an assignment of lottery winnings. In August, 1990, petitioner, Jerryl W. Abbott, won $2,998,515 in the Virginia State Lottery. Under the payout provisions established by the Lottery, Abbott received an initial payment of $148,515 in August, 1990, a payment of $150,000 in August, 1991, and will receive a payment of $150,000 each August from 1992 through 2009. The other petitioner, Stone Street Capital, Inc., has offered to make an immediate lump-sum payment to Abbott of $900,000 in exchange for Abbott's assigning to Stone Street all of his remaining annual payments. The Lottery objects to the assignment.

Virginia Code § 58.1–4013 provides, in pertinent part:

§ 58.1–4013. *Right to prize not assignable; exceptions.* — A. No right of any person to a prize drawn shall be assignable, except that: (i) payment of any prize drawn may be paid according to the terms of a deceased prize winner's beneficiary designation or similar form filed with the [State Lottery] Department or to the estate of a deceased prize winner who has not completed such a form; and (ii) the prize to which the winner is entitled may be paid to a person pursuant to an appropriate judicial order.

Because the court concludes that the above statute evinces a strong legislative policy against assignments of lottery winnings, the petition to authorize an assignment of Abbott's lottery winnings is denied.

Virginia has for centuries frowned upon gambling:

> The public policy of the Commonwealth expressed through statutory provisions has been since 1740 that all promises, agreements, mortgages, and securities, and the like, where the consideration was based on wagers are void.

*Resorts International Hotel, Inc. v Agresta*, 569 F. Supp. 24, 25 (E.D. Va. 1983), *aff'd*, 725 F.2d 676 (4th Cir. 1984). *See also, Coghill v. Boardwalk Regency Corp.*, 240 Va. 230, 232 (1990) ("The public policy of Virginia with respect to the legal enforcement of gambling debts could scarcely be more forcefully expressed. Code § 11–14 provides that all wagers, loans to pay wagers, and contracts to repay wagers 'shall be utterly void'.") (quoting *Kennedy v. Annandale Club*, 221 Va. 504 (1980)).

Indeed, Va. Code § 11–14 still provides:

> All wagers, conveyances, assurances, and all contracts and securities whereof the whole or any part of the consideration be money or other valuable thing won, laid or bet, at any game, horse race, sport or pastime, and all contracts to repay any money knowingly lent at the time and place of such game, race, sport or pastime, to any person for the purpose of so gaming, betting or wagering, or to repay any money so lent to any person who shall, at such time and place, so pay, bet or wager, *shall be utterly void.*

(Emphasis added.)

Because of this strong public policy *against* gambling, those statutes relating to the Virginia State Lottery, which *is* gambling, must be strictly construed. Strict construction mandates denial of the petition.

It is clear that Va. Code § 58.1–4013 is a "prohibiting" statute and not an "allowing" statute; that is, it generally prohibits something from being done instead of allowing something to be done. Indeed, the very first words of the statute, "No right of any person to a prize drawn shall be assignable," unambiguously set forth the general tenor of the statute. While two exceptions to nonassignability are set

out in the statute, those exceptions do not obscure the general prohibition itself. If anything, they amplify such prohibition.

The first exception deals with the death of the prizewinner and allows payments to be made in accordance with the "winner's beneficiary designation or similar form filed with the Department or the estate of a deceased prize winner who has not completed such a form . . . ." The reason for this exception is clear. Many, if not most, potential lottery players would be extremely reluctant to play the lottery if they knew that in the event a prizewinner dies before the 20-year payout period has ended, the state would keep the unpaid winnings instead of paying such winnings to the prizewinner's family, other designated beneficiary, or his or her estate. In fact, while the Lottery argues in its brief that this first exception does not involve an assignment at all, the 1992 amendment to § 4013, which became effective after the Lottery's brief was prepared, makes it clear that payments made after the death of the winner *are* made pursuant to an assignment since the statute now provides that such payments are "effective by reason of the contract involved and this statute and are not to be considered as testamentary or subject to Chapter 3 (§ 64.1–45 et seq.) of Title 64.1." In any event, the first exception is unquestionably a very narrow one and applies only when the prizewinner dies before receiving the entire prize.

Petitioners, of course, rely on the second exception of the statute; that is, that the prize to which the winner is entitled may be paid to a person "pursuant to an appropriate judicial order." While the parties have cited the court to several cases and orders from other states allowing and disallowing assignments similar to the one proposed here, and while petitioners have cited numerous letters and newspaper articles extolling the virtues of transactions such as the one now suggested, none of those items are particularly helpful. The crucial factors, as already stated, are (1) that the statute is in derogation of long-standing public policy and must be strictly construed; and (2) that the statute is a "prohibiting" statute. Simply put, to hold as petitioners request would have the practical effect of annulling the statute itself.

In this case, petitioner Abbott wants to liquidate his winnings in order to purchase a service station. In fact, it is the service station he has been leasing and operating for some time. According to petitioners, this court should find that Abbott is mentally competent to

make such a decision, that the transaction is sound, and that it is in Abbott's best interests. If these criteria are met, according to petitioners, the court should authorize the assignment. But if petitioners are correct, what assignments would the court not authorize? Only adults may play the lottery (Va. Code §§ 58.1–4015 and 4016), and the overwhelming majority of those adults must be presumed to be mentally competent. There are all types of business deals, as well as "non-business" deals, that are "sound." Would a prizewinner's desire to buy a restaurant, or an automobile dealership, or an office building, or a condominium, or an island resort be any less "sound" than Mr. Abbott's desire to buy a service station? And could the court find that any of those things would be less in those winners' best interests than the purchase of a service station is in Mr. Abbott's best interests? In other words, would the court simply be an administrative checkpoint for prizewinners who cannot wait to receive their winnings over a 20-year period? I do not believe that this is what the General Assembly intended.

The obvious question, of course, is if the assignment sought by petitioners here is not the type of assignment allowed by § 58.1–4013, what types of assignments are allowed? This court, of course, may not render advisory opinions. Even so, it is conceivable that a reasonable argument might be made for a court order directing all or a portion of lottery winnings to be paid to a person other than the prizewinner for child or spousal support, equitable distribution, payments related to bankruptcies, debts owed the state, or other matters. It is also conceivable that a prizewinner may present a case which all but demands a court-ordered assignment. For example, a prizewinner who needs a life-saving operation but whose doctor will not perform it unless the costs are paid in advance may be able to convince a court that § 58.1–4013 allows such an assignment. Again, these are not examples of things that do qualify for assignments under the statute, but only this court's idea of items which might at least present colorable claim for assignment. This court specifically expresses no opinion on whether any of these items are assignable under § 58.1–4013.

Finally, this court expresses no opinion on the other matters raised by the Lottery as reasons for its opposition to petitioners' request;

that is, possible adverse tax consequences to future prizewinners,[1] and a desire to "protect prizewinners from themselves." It is not necessary to analyze possible reasons for the general Assembly's actions. Section 58.1–4013 is clear and unambiguous. It prohibits the assignment of lottery winnings except for two very narrow exceptions. Because I find that neither exception is applicable here, there is no need to speculate about the legislature's reasons for the prohibition. Petitioners' request is simply precluded by it.

---

[1] The Lottery argues that the Internal Revenue Service has indicated that if lottery winners are routinely allowed to assign their winnings, future winners, even those who do not assign their winnings, will be taxed in the first year for all their winnings, even though such winnings are paid out over twenty years. Petitioners dispute the Lottery's claim.