COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Coleman and Fitzpatrick
Argued at Alexandria, Virginia


DANIEL JOSEPH BULLIS
                                            OPINION BY
v.  Record No. 2265-94-4          JUDGE JAMES W. BENTON, JR.
                                          MARCH 12, 1996
REGINA BULLIS

            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                   Richard J. Jamborsky, Judge

        Edward A. Shackelford for appellant.

        Gwendolyn Jo M. Carlberg for appellee.



     This appeal arises from a circuit court judgment entered in
an action brought pursuant to the Uniform Enforcement of Foreign
Judgments Act.  Code §§ 8.01-465.1 to 8.01-465.5.  The appellant,
Daniel Joseph Bullis, contends that the trial judge erred in
converting to a Virginia judgment an Arizona judgment that
awarded his former wife, Regina Bullis, a portion of his military
retirement pay.  For the reasons that follow, we affirm the
circuit court's judgment.

                                I.

     The appellee, a resident of Arizona, commenced this action
in 1994 in the Circuit Court of Fairfax County, Virginia, against
appellant, a resident of Virginia, to obtain a Virginia judgment
based upon a judgment she obtained in the Superior Court for the
County of Maricopa in the State of Arizona.  See Aetna Casualty &
Surety Co. v. Whaley, 173 Va. 11, 3 S.E.2d 395 (1939).  In her
"Petition for Judgment," appellee alleged jurisdiction "pursuant
to the Uniform Enforcement of Foreign Judgments Act,

§ 8.01-465.1, et seq., of the . . . Code of Virginia," pursuant to "§ 8.01-466, et seq., of the . . . Code of Virginia," and pursuant to "the Uniform Services Former Spouse's Protection Act (USFSPA), 10 U.S.C. [§] 1401 et seq."

Appellee also alleged that the parties were divorced July 6, 1982, in Arizona and that the divorce decree equitably divided all their community, joint, and common property. She further alleged that on September 24, 1992, a court of record in Arizona entered an order that modified the 1982 divorce decree pursuant to the USFSPA and awarded her "one half of the community interest in the disposable military retirement pay of the [appellant]." Appellee alleged that appellant resided in Fairfax County, was retired from active duty with the United States Army, and was receiving military retirement benefits.

Appellant filed a demurrer in which he alleged that relief was not available under 10 U.S.C. § 1408(a)(4) because he retired from the military under Chapter 61 disability and that appellee had been denied payment when she forwarded her claim to the Defense Finance and Accounting Service. When a judge overruled the demurrer, appellant filed an answer generally denying the allegations in the petition.

## II.

The parties agree upon the essential facts. The appellant joined the United States Army in December 1961 and married appellee in November 1964. They were divorced in Arizona by a

final decree entered July 6, 1982.  The decree equitably divided between them all community, joint, and common property without any reference to retirement pay.

On September 24, 1992, an Arizona superior court granted appellee's petition to modify the final divorce decree and awarded appellee "one-half of the community interest in the disposable military retirement pay of . . . Daniel Joseph Bullis, upon his retirement."  The order also stated the following:

> The community interest is to be determined by the fraction whereby the numerator is the number of months that [Daniel Joseph Bullis] was in the service during the marriage of the parties, or 212 months, over the denominator, which will be the total number of months that [he] has been and will remain in the Armed Services until retirement.

The order further stated that "[appellant was] neither . . . present [nor] represented by counsel, although counsel for . . . [appellant had] been previously notified of this hearing;" that federal legislation enacted after McCarty v. McCarty, 453 U.S. 210 (1981), entitled appellee to file a claim for a portion of appellant's disposable military retirement payments; that the court observed and complied with the Soldiers and Sailors Civil Relief Act of 1940; and that the court had jurisdiction under Arizona law to modify the final decree and order a division of the retirement payments.  Appellant did not appeal from the Arizona order modifying the final divorce decree.

The trial judge found the Arizona judgment to be valid and entered a Virginia judgment awarding appellee "a sum equal to

one-half . . . of the disposable interest of [appellant's] nondisability, nonexempt military retired pay on a monthly basis pursuant to the percentage formula under the amended law of 1986 of 10 U.S.C. [§] 1408, Uniformed Services Former Spouses Protection Act."  Based upon a finding that appellant retired from the military in March 1993 with a permanent disability rating of 60% and received $596.85 per month "nondisability, nonexempt, disposable portion of retired pay," the trial judge entered judgment awarding appellee $294.43 monthly and $4,774.80 in arrearages, computed from the date of appellant's retirement.  The trial judge retained jurisdiction "pending [appellee's] first receipt of payment for her portion in monthly retired pay, the sum certain amount to be determined by the Defense Finance and Accounting Service in Indianapolis, Indiana according to the formula established by the Arizona court."  In addition, the trial judge retained jurisdiction "to reflect any increase in the cost of living adjustment (COLA) which [appellant] may have received pending first payment to [appellee]" and ordered other relief.  This judgment order is the subject of this appeal.

### III.

Appellant has not addressed in his brief the statute that confers jurisdiction in this Court to entertain his appeal. Appellee does not contest jurisdiction.  We are required, however, to ascertain our jurisdiction before proceeding.  West v. Commonwealth, 18 Va. App. 456, 445 S.E.2d 159 (1994), appeal

dismissed, 249 Va. 241, 455 S.E.2d 1 (1995); In re O'Neil, 18 Va. App. 674, 446 S.E.2d 475 (1994).  In Virginia, "[t]he general appellate jurisdiction . . . is in the Supreme Court and not in the Court of Appeals."  West, 18 Va. App. at 458, 445 S.E.2d at 160.  This Court's appellate jurisdiction in civil cases "is limited to the subject matter set forth in Code §§ 17-116.05 and 17-116.05:1."  West, 18 Va. App. at 457, 445 S.E.2d at 159.  In pertinent part, Code § 17-116.05 provides as follows:

> Any aggrieved party may appeal to the Court of Appeals from:
>
> *    *    *    *    *    *    *
>
> 3.  Any final judgment, order, or decree of a circuit court involving:
>
>     a.  Affirmance or annulment of a marriage;
>     b.  Divorce;
>     c.  Custody;
>     d.  Spousal or child support;
>     e.  The control or disposition of a child;
>     f.  Any other domestic relations matter arising under Title 16.1 or Title 20; or
>     g.  Adoption under Chapter 11 (§ 63.1-220 et seq.) of Title 63.1;
>
> 4.  Any interlocutory decree or order entered in any of the cases listed in this section (i) granting, dissolving, or denying an injunction or (ii) adjudicating the principles of a cause.

In Carlton v. Paxton, 14 Va. App. 105, 415 S.E.2d 600, aff'd, 15 Va. App. 265, 422 S.E.2d 423 (1992) (en banc), the appellant appealed to this Court from a chancery court proceeding that was instituted as an independent action pursuant to Code

§ 8.01-428 to set aside an order of adoption. The trial judge had refused to set aside a final decree of adoption after the evidence proved the child's father had not received notice. Relying upon the literal language in Code § 17-116.05(3)(g), this Court ruled by order that jurisdiction did not lie because "the appeal is not from a final decree involving adoption." (Unpublished order, May 1, 1991). When the appeal was transferred to the Supreme Court, that Court ruled by order that a decree refusing to vacate or set aside an order of adoption is a final decree involving adoption. See Carlton v. Paxton, Record No. 910689 (May 15, 1991). Applying that ruling, this Court held in a later case that an appeal from a final order entered in an independent action brought pursuant to Code § 8.01-428 to set aside a decree for fraud was appealable to this Court. Khanna v. Khanna, 18 Va. App. 356, 357 n.1, 443 S.E.2d 924, 925 n.1 (1994). The Court reasoned that the underlying cause was an annulment and, therefore, jurisdiction was proper under Code § 17-116.05(3)(a). Id.

The rulings in Carlton and Khanna suggest that jurisdiction over this appeal lies in this Court. Although this action was instituted in the circuit court for the purpose of domesticating and enforcing a judgment of another state, the subject matter of the underlying issue involved a domestic relations matter. As in Khanna, we conclude that jurisdiction over an appeal from a final judgment must be based upon an assessment of the underlying

cause.  See 18 Va. App. at 357 n.1, 443 S.E.2d at 925 n.1.

Because the underlying cause in this case is a decree involving a

divorce, we hold that this Court has jurisdiction to review the

final judgment.

IV.

Appellant raises the following issues on this appeal:

1. Whether the Court erred in determining that there was any military retired pay which fell within the definition of "disposable" under 10 U.S.C. [§] 1408 when the parties were divorced on July 6, 1982 and Appellant was later retired under Chapter 61, 10 U.S.C. for disability.

2. Whether the Court erred in determining that the November 16, 1986 amendment to 10 U.S.C. [§] 1408 was controlling, rather than the original September 8, 1992 Act (retroactive to June 25, 1981) which was the controlling statute fixing the definition of "disposable retired pay" at the time of the divorce order.

3. Whether the Court erred in awarding the appellee a sum equal to one-half (1/2) of the disposable amount of the husband's military retired pay in disregard of Code of Virginia, 1950, as amended, § 20-107.3(G)(1).

4. Whether the Court erred in awarding an amount certain in monthly entitlement and arrearages, without hearing evidence and applying all applicable law.

5. Whether the Court erred in awarding counsel fees to the Wife.

6. Whether the Court erred in issuing an order with internal inconsistencies as to the determination of entitlements and arrearages.

Although none of these issues expressly challenge the validity of the Arizona judgment, the Arizona judgment is the basis upon which the trial judge entered the judgment. "The United States Constitution, as well as federal and state statutes, requires the courts of this state to give full faith and credit to a judgment rendered in another state, provided the

- 8 -

foreign court had jurisdiction over the parties and the subject matter."  Hupp v. Hupp, 239 Va. 494, 499, 391 S.E.2d 329, 332 (1990).

Citing Fauntleroy v. Lum, 210 U.S. 230, 237 (1908), the Supreme Court has further held as follows:

> The effect of the Full Faith and Credit Clause was to render the foreign judgment immune from reexamination for error in the domestic court.  Therefore, even if the [state] court [whose judgment is being enforced] had erred with respect to the enforceability of the underlying transaction (by misperceiving the law of [another jurisdiction]) the remedy for that error was direct appeal, not collateral attack in the courts of a sister state.

Coghill v. Boardwalk Regency Corp., 240 Va. 230, 233, 396 S.E.2d 838, 839 (1990).  Neither the trial court nor this Court has the power to correct any alleged mistakes in the Arizona court's application of the law when rendering its judgment.  Thus, to the extent appellant collaterally attacks the Arizona court's alleged misapplication of the law, this Court cannot reexamine the Arizona ruling.

V.

To clarify the parties' disagreement, we briefly address the history concerning a state's ability in divorce decrees to divide military retirement benefits as property.  In 1981, the United States Supreme Court held in McCarty v. McCarty, 453 U.S. 210, 223 (1981), that federal law precludes state courts from dividing military retirement benefits pursuant to state community property

laws. Congress responded to McCarty by enacting the USFSPA, which enabled state courts to treat "disposable retired or retainer pay . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." Pub. L. No. 97-252, 96 Stat. 730, 731 (1982) (codified as amended at 10 U.S.C. § 1408(c)(1) (1994)). The USFSPA was effective on February 1, 1983, and applied to disposable retired pay payable after June 25, 1981, the day of the McCarty decision, and to court orders entered after that date. Pub. L. No. 97-252, 96 Stat. 730, 737, § 1006 (1982); see also Mansell v. Mansell, 490 U.S. 581, 588 n.7 (1989).

When first enacted, the USFSPA excluded all Chapter 61 disability benefits, see 10 U.S.C. § 1201, from the definition of "disposable" retired pay, effectively sheltering all Chapter 61 disability benefits from distribution to military spouses in divorce actions. 10 U.S.C. § 1408(a)(4). Thus, if a service member retired under Chapter 61 with a disability rating, all of that member's pay was excluded from the definition of disposable retired pay. However, on November 14, 1986, Congress amended the USFSPA to exempt only the portion of a member's retired pay attributable to the member's disability. Pub. L. No. 99-661, 100 Stat. 3887, § 644(a)(1) (1986) (codified as amended at 10 U.S.C. § 1408 (a)(4)(C) (1994)). The 1986 amendment further stated that the amendment "shall apply with respect to court orders issued

after the date of the enactment of this Act."  Id. at § 644(b).

With that backdrop, the Superior Court for the County of Maricopa, Arizona, entered an order on September 24, 1992, modifying the parties' final decree of divorce as follows:

> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED:
>
> The Decree of Dissolution of Marriage entered in this cause on July 6, 1982 is hereby modified to award to Petitioner, Regina Bullis, her one-half of the community interest in the disposable military retirement pay of the Respondent, Daniel Joseph Bullis, upon his retirement.  The community interest is to be determined by the fraction whereby the numerator is the number of months that Respondent was in the service during the marriage of the parties, or 212 months, over the denominator, which will be the total number of months that Respondent has been and will remain in the Armed Services until retirement.

Appellant does not contend that the Arizona court lacked personal or subject matter jurisdiction to enter the order. Furthermore, we note that the Arizona Supreme Court has held that Arizona Revised Statutes § 25-327(A) and Rule 60 of the Arizona Rules of Civil Procedure grant Arizona trial courts the power to reopen final divorce decrees entered after McCarty, and before enactment of USFSPA.  Under this ruling, former spouses may claim a community interest in the disposable military retirement pay of the military member.  See Edsall v. Superior Court, 693 P.2d 895, 897-901 (Ariz. 1984).  Thus, to the extent that appellant's first two issues challenge the validity of the Arizona judgment, we conclude the trial judge did not err in ruling that the Arizona

judgment modifying the parties' final divorce decree was valid under Arizona law.  The record also supports the trial judge's finding that neither party appealed the Arizona judgment.  Thus, the trial judge did not err in beginning his analysis by giving full faith and credit to the Arizona judgment.

VI.

Appellant first contends that the trial judge erred in determining that his Chapter 61 disability retired pay is "disposable" retired pay within the meaning of 10 U.S.C. § 1408.  He argues the applicable law is the original USFSPA, not the USFSPA as amended in 1986.  This issue arises because the 1992 Arizona decree did not address whether the original or amended USFSPA controlled the definition of "disposable retired pay."

The parties' final divorce decree was entered on July 6, 1982, after the McCarty decision but before the enactment of the USFSPA.  Obviously, appellant cannot claim the McCarty ban protects him from having his retired pay considered as property subject to division in a state court divorce proceeding.  When Congress enacted the USFSPA, "Congress sought to change the legal landscape created by the McCarty decision."  Mansell, 490 U.S. at 587-88.  Moreover, Congress chose June 25, 1981, the day before the McCarty decision, as the applicable date for restoring partial state authority over military retirement benefits.  Id. at 588 n.7.  By express provision, Congress included within the coverage of USFSPA divorce decrees such as the parties' decree,

- 12 -

entered after <u>McCarty</u> and modified under the law of the state granting the divorce.  Thus, the only issue before the trial judge was whether the term "disposable retired pay" was governed by the original USFSPA or the 1986 amended USFSPA, now in effect.

The original text of the USFSPA defined "disposable retired or retainer pay" as follows:

> "<u>Disposable retired</u> or retainer <u>pay</u>" means the total monthly retired or retainer pay to which a member is entitled (<u>other than</u> the retired pay of a member retired for <u>disability</u> under <u>Chapter 61</u> of this title) less amounts which . . . .

10 U.S.C. § 1408(a)(4) (emphases added).  According to the plain language of the statute, Chapter 61 military pensions are sheltered in their entirety from division at divorce.  <u>See</u> <u>also</u> <u>Mansell</u>, 490 U.S. at 589.  If, for example, a service member retired under Chapter 61 with a disability rating of 60%, <u>all</u> of that member's pay fell outside the definition of "disposable" pay and could not be apportioned by a state court order.

Congress removed the total exclusion on Chapter 61 retired pay when it amended the USFSPA's definition of "disposable retired pay" effective November 14, 1986, by Public Law 99-661.  Section 644(a) of the revised USFSPA changed subsection (a)(4) of the original Act and inserted in lieu thereof the following language:

> (4)  The term <u>"disposable retired pay"</u> means the total monthly retired pay to which a member is entitled <u>less</u> amounts which . . . .
>
> (C) in the case of a member entitled to retired pay under Chapter 61 of

this title, <u>are equal to the amount of retired pay</u> of the member under that chapter computed <u>using</u> the <u>percentage</u> of the member's <u>disability</u>

on the date when the member was
retired. . . .

10 U.S.C. § 1408(a)(4)(C) (emphases added).

The amended version of the USFSPA therefore exempts only that portion of Chapter 61 benefits which corresponds to the retiree's disability percentage rating at the time of retirement. If, for example, a service member retires with 60% disability under Chapter 61, then 60% of the member's retirement benefits are excluded from the definition of "disposable retired pay." The remaining 40% of the member's benefits may be judicially apportioned under state community property laws.

In addition to the revised definition of "disposable retired pay," § 644(b) of the 1986 amended USFSPA contains the following clause:

EFFECTIVE DATE. -- The amendments made by subsection (a) shall apply with respect to court orders issued after the date of the enactment of this Act [November 14, 1986].

Currently, 32 C.F.R. 63.6(e)(2) states that "[f]or court orders issued on or before November 14, 1986 (or amendments thereto) disposable retired [pay] does not include retired pay of a member retired for disability under 10 U.S.C. Chapter 61."

To support his argument that none of his retired pay is "disposable" within the meaning of the USFSPA, appellant relies on Wallace v. Fuller, 832 S.W.2d 714 (Tex. Ct. App. 1992). In Wallace, the service member and his wife were divorced in 1966. The divorce decree contained no reference to retirement benefits.

Id. at 715.  The service member retired in 1973 with a Chapter 61 disability rating of 60%.  Id. at 718.  The trial judge modified the divorce decree on October 9, 1986, and awarded the service member's former wife a portion of his Chapter 61 benefits.  Id. at 715-16.  The Texas Court of Appeals reversed the judgment, holding that the original USFSPA, then in effect, did not treat Chapter 61 disability pay as disposable income.  Id. at 718.

Wallace provides little guidance in deciding this case because all the significant events in Wallace -- i.e., the divorce, retirement from the military, and the modified order -- occurred before November 14, 1986, the effective date of the amended Act.  In the case before us, the initial Arizona divorce decree was entered in 1982.  However, the Arizona court modified the final order on September 24, 1992, after the effective date of the amended USFSPA.  Likewise, appellant retired in 1993, after the effective date of the amended Act.

When Congress amended the USFSPA in 1986 to revise the definition of "disposable retired pay," the amended Act stated in plain terms that the amendment made to the USFSPA "shall apply with respect to court orders issued after the date of the enactment of this Act."  Pub. L. No. 99-661, 100 Stat. 3887, § 644(b) (1986) (emphasis added).  Furthermore, the amended Act provides that "[t]he term 'court order' means a final decree of divorce . . . (including a final decree modifying the terms of a

previously issued decree of divorce . . . .)."  10 U.S.C. § 1408 (a)(2) (emphasis added).  Thus, the 1992 Arizona order, which is an order modifying the 1982 final decree, is a court order within the USFSPA's definition of "court order."  Furthermore, that order was issued after November 14, 1986, the effective date of the amended Act.

Appellant contends, however, that Carmody v. Secretary of the Navy, 886 F.2d 678 (4th Cir. 1989), contains a definition of "court order" under the USFSPA that supports his position.  In Carmody, the original California divorce decree, entered on October 1, 1965, was also silent as to the division of the military pension.  Id. at 679.  The decree was modified on September 9, 1986, to award the member's former wife 29% of his military retirement benefits.  Id.  On the wife's appeal from the trial judge's ruling that she was not entitled to avail herself of the direct payment provision of USFSPA, the Fourth Circuit affirmed the judgment and ruled that the California order modified a divorce decree which predated the McCarty decision of June 26, 1981.  Id. at 680.  Nothing in the Court's recitation of the definition of "court order" supports appellant's contention in this case.  See id. at 681.

Alternatively, appellant argues that the 1992 Arizona modification order retroactively applies the amended USFSPA and impairs his substantive or vested rights.  We disagree.  The amended USFSPA plainly states that the Act will not be given

retroactive effect, but shall apply to "court orders" issued after the effective date of enactment.  We agree with appellee that the 1992 modification order is a "court order" as defined by the Act because it is "a final decree modifying the terms of a previously issued decree of divorce."  10 U.S.C. § 1408(a)(2). The modification order does not retroactively apply the Act.

Moreover, even if appellant's vested rights argument had merit, appellant cannot now challenge in a Virginia court the effect of the 1992 Arizona order.  That ruling, directing a division of his military retirement benefits, was made by an Arizona court applying Arizona and federal laws.  Appellant could have raised his vested rights arguments on appeal in the Arizona courts and is precluded from collaterally attacking this non-jurisdictional issue.  See Liberty Mut. Ins. Co. v. Eades, 248 Va. 285, 288, 448 S.E.2d 631, 633 (1994); Coghill, 240 Va. at 233, 396 S.E.2d at 839.  Because the 1992 Arizona judgment is a "court order" under the USFSPA, the trial judge did not err in applying the amended Act and ruling that appellee is entitled to receive "one-half of the community interest in appellant's disposable military retirement pay" under the USFSPA in effect in 1992.

### VII.

Appellant also contends the trial judge erred in awarding appellee one-half of the entire disposable amount of his military retired pay.  He contends that appellee was only entitled to

one-half of the "marital share," the designation provided in Virginia law.  See Code § 20-107.3(G)(1).  Appellant's reliance on Virginia law is misplaced.  Under the Uniform Enforcement of Foreign Judgments Act, Code § 8.01-465.1 et seq., the trial judge correctly ruled that the "community interest" is determined by Arizona law.  "We have only the foreign judgment before us, not the underlying transaction on which it was based."  Coghill, 240 Va. at 235, 396 S.E.2d at 840.

We note, however, that the judgment order of the Circuit Court of Fairfax County is internally inconsistent.  The initial two paragraphs of the order and paragraphs numbered 2, 3, 7, and 12 correctly recite that the Arizona court awarded the appellee "one-half (1/2) of the community property interest in the disposable military retired pay."  Other paragraphs of the order are inconsistent with these recitations and the Arizona judgment.  For example, numbered paragraph 5 refers to "one-half (1/2) of the disposable interest of . . . military retired pay," and numbered paragraph 11 refers to "marital share."

Appellee agrees that "[t]he duty of the Virginia trial court . . . was to give the Arizona order full faith and credit."  Because the circuit court is only enforcing the Arizona judgment, the judgment order must apply the community property interest formula specified in the Arizona order.  The provisions in the circuit court's order that are inconsistent with the Arizona order are obvious drafting errors that must be corrected on

remand. In particular, we note that the calculations contained in numbered paragraph 6 are also based on the drafting error and must be corrected.

## VIII.

Appellant also contends the trial judge erred in (1) ordering monthly and arrearage amounts without regard to income tax law changes and without hearing any evidence or applying applicable law, (2) awarding a definite monthly amount, in addition to stating that the Defense Finance and Accounting Service would set "the sum certain," and (3) awarding appellee her attorney's fees. Appellant failed to object to these issues in the trial court below and is barred from raising them on appeal. Rule 5A:18.

For these reasons, the judgment is affirmed and remanded for correction of the drafting errors referred to in Part VII of this opinion.

<u>Affirmed and remanded.</u>