COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


MARY K. KEOUGH, A/K/A
 MARY S. PELLETTIERI
                                   MEMORANDUM OPINION[*] BY
v.  Record No. 2140-96-4       JUDGE JAMES W. BENTON, JR.
                                        MAY 13, 1997
FRANCIS P. KEOUGH


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    F. Bruce Bach, Judge

         Robert B. Machen for appellant.

         Ann W. Mische (Byrd, Mische, Bevis, Bowen,
         Joseph & O'Connor, P.C., on brief), for
         appellee.


    Mary Keough Pellettieri appeals from an order determining

her interest in the military retirement pay received by her

former husband, Francis P. Keough.  Pellettieri argues that the

trial judge erred in (1) miscalculating the portion of Keough's

retirement pay to which she is entitled, (2) ruling that any

amount of retirement benefits waived by Keough in order to

receive disability benefits should be subtracted from his gross

retirement pay before determining her monetary share, and (3)

ruling that Veterans Administration (VA) disability benefits are

"disability benefits" for purposes of determining the parties'

shares of Keough's retirement pay pursuant to the consent order.

 For the reasons that follow, we affirm.

───────────────

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

## I.

In the parties' final decree of divorce, the trial judge awarded Pellettieri a lump sum of Keough's military retirement pay, to be paid in monthly installments equal to fifty percent of Keough's pay until the lump sum amount was satisfied. Pellettieri appealed the decree and argued that the trial judge erred by valuing the pension as of the date of the 1987 divorce decree. This Court agreed with her argument and remanded the case for valuation of the pension as of the date of the evidentiary hearing. Following that appeal and based upon the parties' agreement, the trial judge entered a consent order in July 1990 regarding Pellettieri's share of Keough's retirement pay.

On November 14, 1994, Pellettieri filed a motion seeking clarification of the July 1990 order. Following an evidentiary hearing, the trial judge entered a final order clarifying the July 1990 order. This is an appeal from that order.

## II.

In her brief, Pellettieri argued that the trial judge erred in his calculation of her share of Keough's disability benefits. At oral argument, however, Pellettieri's counsel acknowledged that the argument was based on a mathematical error and withdrew this argument. We agree that the briefs demonstrate that Pellettieri's calculation was erroneous. Accordingly, we need not address this issue further.

Pellettieri also argues that the trial judge erred in reducing the amount of Keough's gross retirement pay by the amount of the disability benefits Keough received.  We disagree.

The evidence proved that Keough retired from military service in 1993.  In August 1994, the VA authorized payment of disability compensation to Keough.  In order to receive disability benefits, Keough had to waive an equivalent amount of his retirement pay.

The parties' agreement, which was later incorporated into a consent order, stated the following:

> [Pellettieri] shall have an interest in the marital portion of [Keough's] monthly military pension (<u>minus and exclusive of disability payments</u>) as set out in the following formula:
>
> > (18 years divided by years of actual service) times 50% times the following figure:  the gross retired monthly military pay in an amount that would have been paid if [Keough] had retired on December 5, 1984 (i.e., $23,336 per annum or $1,944.67 per month), <u>less (18 years divided by years of actual service times 50% of disability payments)</u>.

(Emphasis added.)

In the order Pellettieri appealed from, the trial judge used the actual years of service and set forth the following formula for computing Pellettieri's share of Keough's retirement payments:  "Twenty-nine percent (29%) of the gross retired monthly military entitlements, less twenty-nine percent (29%) of

the monthly disability payment."  The parties agree that twenty-nine percent is the correct proportion.  Furthermore, the parties' agreement, as reflected in the consent order, unambiguously requires a reduction of the gross retirement pay by the disability payments received.

Citing Bullis v. Bullis, 22 Va. App. 24, 467 S.E.2d 830 (1996), Pellettieri argues that no disability payments should be used in the calculation to reduce her share of Keough's retirement pay.  She contends that because Keough did not have a disability rating at the time of his retirement, Bullis bars the use of disability payments to reduce her share of Keough's retirement payments.  She misconstrues Bullis.  In Bullis, the appellant argued that none of his retirement pay was subject to division on divorce.  See id. at 34-35, 467 S.E.2d at 835-36.  Appellant based his argument on a definition of "disposable retired pay" contained in the original Uniformed Services Former Spouses' Protection Act (USFSPA), which was later amended in 1986.  See id.  Under the original version of USFSPA, if a spouse received any Chapter 61 disability benefits, all of that spouse's retirement pay was exempted from division at divorce.  See id. at 35-36, 467 S.E.2d at 836.

In discussing the statutory changes implemented by Congress in the amended USFSPA, this Court stated:

> The amended version of the USFSPA therefore exempts only that portion of Chapter 61 benefits which corresponds to the retiree's disability percentage rating at the time of retirement.  If, for example, a

> service member retires with 60% disability
> under Chapter 61, then 60% of the member's
> retirement benefits are excluded from the
> definition of "disposable retired pay."  The
> remaining 40% of the member's benefits may be
> judicially apportioned under state community
> property laws.

Id. at 36, 467 S.E.2d at 836.  Contrary to Pellettieri's assertion, the discussion in that passage was not a ruling that any disability rating that occurs after the spouse's retirement is precluded from consideration.  The paragraph, read as a whole, highlights the exemption provision of the amended USFSPA and notes that under the amended statute, if a spouse receives a partial disability rating, only a portion of the spouse's military retirement pay is exempt from division at divorce.  See id.

Moreover, the discussion in Bullis related to a reduction in "disposable retired pay" under 10 U.S.C. § 1408(a)(4)(C) (1994).  See Bullis, 22 Va. App. at 33, 467 S.E.2d at 835.  Subsection C applies to service members who are retired due to their disability and are entitled to receive "retired pay" under Chapter 61.  See 10 U.S.C. § 1408(a)(4)(C) (1994); 10 U.S.C. §§ 1201–1221 (1994) ("Chapter 61 – Retirement or Separation for Physical Disability").

In this case, on the other hand, Keough was already retired before his disability was determined.  He received disability payments pursuant to Title 38.  See 38 U.S.C. §§ 1110, 1131 (1994).  Thus, 10 U.S.C. § 1408(a)(4)(B) (1994), which references

- 5 -

Title 38, would apply to this case.  Therefore, the discussion of subsection C in <u>Bullis</u> does not apply to Keough's retirement pay.

We hold that Pellettieri's assertion -- that any disability payments received pursuant to a disability rating that arises after the service member's retirement are precluded from consideration when dividing the retirement pay -- is without merit.  Accordingly, the trial judge's order is not plainly wrong.

IV.

Pellettieri next argues that the trial judge erred in concluding that the term "disability payments," contained in the parties' agreement and the consent order, included Keough's VA disability benefits.  We disagree.

The term "disability" is defined as a "lack . . . of physical, intellectual, or emotional capacity or fitness." <u>Webster's Third New International Dictionary</u> 642 (1981).  Indeed, the federal statutory authority for providing Keough's benefits states that the benefits are to cover "disability resulting from personal injury."  38 U.S.C. § 1110 (1994) (injury suffered during wartime); 38 U.S.C. § 1131 (1994) (injury suffered during peacetime).  Moreover, the evidence reveals that the Department of Veterans Affairs awarded Keough "service-connected disability compensation" for cervical disc syndrome, degenerative arthritis to the right hip, lumbosacral strain, mild asthma, and status post fracture of the left wrist.  Because those ailments impaired

Keough's physical fitness, the plain terms of the order dictate that the VA benefits were included within the term "disability benefits."

For these reasons, the judgment is affirmed.

<u>Affirmed</u>.